# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-10-00019-CV

Appellants, Dr. Don Brantley, Belinda Castillo, Dr. Corinne Alvarez-Sanders and
Patricia Logterman// Cross-Appellants, Texas Youth Commission; Cherrie Townsend
in her official capacity as Executive Director

v.

Appellees, Texas Youth Commission; Cherrie Townsend in her official capacity as
Executive Director// Cross-Appellees, Dr. Don Brantley, Belinda Castillo,
Dr. Corinne Alvarez-Sanders and Patricia Logterman

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
NO. D-1-GN-09-001812, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## O P I N I O N

After allegations surfaced that employees of the Texas Youth Commission (TYC) had sexually abused youths housed in that agency's facilities, the Eightieth Texas Legislature enacted Senate Bill 103, which amended a number of statutory provisions governing that agency.[1] In section 37 of S.B. 103, the Legislature changed the basis of employment at TYC, which prior statutes had previously made for-cause, to at-will.[2] This appeal concerns attempts by a group of present and former TYC employees to challenge the constitutionality of that change.

---

[1] Act of May 25, 2007, 80th Leg., R.S., ch. 263, §§ 1-78, 2007 Tex. Gen. Laws 421, 421-57 (current version at Tex. Hum. Res. Code Ann. §§ 61.001-.130 (West 2001 & Supp. 2010)); *see* Senate Research Center, Bill Analysis, Tex. S.B. 103, 80th Leg., R.S. (2007) (discussing background of the amendments).

[2] Act of May 25, 2007, 80th Leg., R.S., ch. 263, § 37, 2007 Tex. Gen. Laws 421, 439 (current version at Tex. Hum. Res. Code Ann. § 61.035(b)).

Four current or former TYC employees who had begun working at the agency before section 37 took effect—two of whom allegedly resigned under threat of termination before section 37 took effect, one of whom was terminated after section 37 took effect, and one of whom continues to work for the agency (collectively, Plaintiffs)—sued TYC and its executive director seeking declaratory, injunctive, and monetary relief based principally on the allegation that section 37 unconstitutionally deprived them of property rights in their employment. TYC and its executive director (collectively, the TYC Defendants) interposed a plea to the jurisdiction, which the district court granted in part and denied in part. Both Plaintiffs and the TYC Defendants appeal the district court's order. We will affirm the district court's order in part and reverse in part.

## STANDARD OF REVIEW

A plea to the jurisdiction challenges a trial court's authority to decide the subject matter of a specific cause of action. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Analysis of whether this authority exists begins with the plaintiff's live pleadings. *Id.* at 226. The plaintiff has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). Whether the plaintiff met this burden is a question of law that we review de novo. *Id.* We construe the pleadings liberally, taking them as true, and look to the pleader's intent. *Id.*; *Texas Logos, L.P. v. Brinkmeyer*, 254 S.W.3d 644, 659 (Tex. App.—Austin 2008, no pet.). Mere unsupported legal conclusions are insufficient. *See Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 515-16 & nn.7 & 8 (Tex. App.—Austin 2010, no pet.). If the pleadings fail to allege sufficient facts to

affirmatively demonstrate the trial court's jurisdiction but also fail to affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226-27. If, on the other hand, the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227.

We must also consider evidence the parties presented below that is relevant to the jurisdictional issues, *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000), including evidence that a party has presented to negate the existence of facts alleged in the plaintiff's pleading. *See Miranda*, 133 S.W.3d at 227; *see also Combs v. Entertainment Publ'n, Inc.*, 292 S.W.3d 712, 719 (Tex. App.—Austin 2009, no pet.) (summarizing different standards governing evidentiary challenges to the existence of pleaded jurisdictional facts where such facts implicate both jurisdiction and the merits versus where they implicate only jurisdiction). Our ultimate inquiry is whether the plaintiff's pleaded and un-negated facts, taken as true and liberally construed with an eye to the pleader's intent, would affirmatively demonstrate a claim or claims within the trial court's subject-matter jurisdiction. *See Miranda*, 133 S.W.3d at 226; *Creedmoor-Maha*, 307 S.W.3d at 513, 516 n.8. This is a question of law that we review de novo. *See Miranda*, 133 S.W.3d at 226; *Creedmoor-Maha*, 307 S.W.3d at 513, 516 n.8.

**STATUTORY AND PROCEDURAL CONTEXT**

Before turning to the record in this appeal, it is helpful first to briefly review the changes to the statute and TYC procedures that provide the context for Plaintiffs' claims and the parties' appellate issues. Prior to being amended by section 37 of S.B. 103, section 61.035 of

the human resources code provided that the TYC "may remove any employee for cause." The United States Supreme Court has held that state laws conferring to public employees more than a unilateral expectation of continued employment create a property right in that employment, such that an employee must be afforded procedural due process before being involuntarily terminated, including receiving notice of the grounds for termination and an opportunity to respond. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-46 (1985). To implement these requirements, TYC had promulgated policies and procedures requiring the agency, when terminating an employee, to first provide the employee a written recommendation-to-terminate letter giving notice of the basis for the proposed discharge and of the opportunity to be heard by the decision-maker prior to a final decision. If the recommendation was adopted and the employee was terminated, the employee then had access to a grievance process that entailed an evidentiary hearing in which TYC had the burden of proof as to the basis for termination. After hearing evidence, the hearing officer would then prepare a proposal for decision, including proposed findings of fact and conclusions of law, and transmit it to TYC's executive director. The executive director then made the final decision on the grievance, and could either affirm the termination or reinstate the employee with or without backpay and with or without discipline or other conditions.

Section 37 of S.B. 103 amended the human resources code to replace the "for cause" requirement with a provision stating that "an employee of the commission is employed on an at-will basis."[3] The Legislature also mandated that TYC "establish procedures and practices governing:

---

[3] Act of May 25, 2007, 80th Leg., R.S., ch. 263, § 37, 2007 Tex. Gen. Laws 421, 439 (current version at Tex. Hum. Res. Code Ann. § 61.035(b)).

4

(1) employment-related grievances submitted by commission employees; and (2) disciplinary actions within the commission, including a procedure allowing a commission employee to elect to participate in an independent dismissal mediation if the employee is recommended for dismissal."[4] Section 37, along with the other provisions of S.B. 103, took effect on June 8, 2007.[5]

After section 37 took effect, TYC, although retaining a grievance process for employees who are involuntarily terminated, amended its policies and procedures to emphasize that the process "does not create a property interest in agency employment, nor is it a promise or guarantee of any particular procedure." The agency also changed its grievance process to provide that a termination decision made directly by the executive director—i.e., the same official who would serve as the ultimate decisionmaker on any employee grievance concerning the termination—was "final and not appealable" via that administrative process.

## THE RECORD

The record in this case consists of Plaintiffs' live petition at the time of the hearing on the TYC Defendants' plea to the jurisdiction,[6] evidence that the TYC Defendants attached to their plea, and evidence that Plaintiffs attached to their response.

---

[4] *Id.*

[5] Act of May 25, 2007, 80th Leg., R.S., ch. 263, § 78, 2007 Tex. Gen. Laws 421, 457.

[6] Plaintiffs' live pleading was their first amended petition. The TYC Defendants have attached to their appellate briefing what purports to be a copy of a second amended petition that Plaintiffs filed after the district court's ruling. The TYC Defendants cite this pleading to support arguments that Plaintiffs cannot cure, via repleading, the jurisdictional defects that were identified in the district court's order. Strictly speaking, however, this pleading is not part of the record in this case, nor was it before the district court at the time of the ruling on appeal.

5

**Plaintiffs' petition**

Two of the four Plaintiffs—Patricia Logterman and Dr. Corinne Alvarez-Sanders—allege that on April 19, 2007 (which, it is undisputed, is the day on which S.B. 103 passed the Texas Senate), they were each summoned to the office of TYC's then-acting chief of staff, Dimitria Pope, and given the choice of either resigning from their jobs with the agency or being fired. "When asked why," the two allege, "Pope replied that Plaintiffs would be told if and when they chose to be terminated." "Threatened with possible investigation by the Texas Rangers and the Office of the Inspector General," Logterman and Alvarez-Sanders further assert, they "chose to be constructively discharged rather than face the possibility of being vilified in the media." They add that although they "subsequently requested to withdraw their resignations, Pope denied their requests" and similarly denied grievances each subsequently attempted to file.

A third Plaintiff, Dr. Don Brantley, alleges that "Pope also requested [that he] quit or be fired on April 19, 2007." In contrast to Alvarez-Sanders and Logterman, Brantley demanded "due process and a hearing." In response, Brantley complains, TYC did not proceed with terminating him but instead suspended him until after section 37 took effect. Then, in July 2007, TYC and its acting executive director at the time, Ed Owens, "informed Dr. Brantley that because Senate Bill 103 took away his status as a for-cause employee, he was not entitled to due process or a termination hearing," and "then terminated Dr. Brantley without affording him due process or a hearing."

The fourth Plaintiff, Castillo, alleges that she has "been continuously employed by the TYC from 1994 to the date of the filing of this action." Castillo asserts that, S.B. 103

6

notwithstanding, she "was and remains at all times a for cause employee" but that "[t]he TYC, however, currently considers [her] to be an at will employee, despite the fact that she was employed by the TYC before the effective date of Senate Bill 103."[7]

Based on these factual allegations, Plaintiffs collectively purport to assert three basic sets of liability theories. First, Alvarez-Sanders and Logterman allege that (1) they were for-cause employees as of the date of their resignations in April 2007; (2) they were constructively discharged; and (3) TYC discharged them without complying with its procedures governing involuntary termination of for-cause employees. Consequently, Alvarez-Sanders and Logterman reason, they were "wrongfully terminated" by being dispossessed of their "vested property interest" in their jobs without due process.

Second, all four Plaintiffs pled that section 37 is invalid and unenforceable because it violates constitutional prohibitions against retroactive legislation, ex post facto laws, and bills of attainder.[8] It thus follows, Plaintiffs further assert, that section 37 was ineffective to change their respective employment statuses from for-cause to at-will. Also, predicated on these assertions, Brantley further alleges that he continued to be a for-cause employee even after section 37's effective

[7] Castillo also purports to sue on behalf of a putative class of current TYC employees. The record does not reflect that a class-certification motion has either been filed or ruled upon below.

[8] *See* U.S. Const. art. I, § 9, cl. 2 ("No Bill of Attainder or ex post facto Law shall be passed."); U.S. Const. amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law"); Tex. Const. art. I, §§ 16 ("No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."), 19 ("No citizen of this State shall be deprived of . . . property, privileges or immunities . . . except by the due course of the law of the land.").

7

date and that he was "wrongfully terminated" without adherence to the procedural protections to which for-cause TYC employees were entitled.

Third, Alvarez-Sanders, Logterman, and Brantley allege that in connection with the complained-of personnel actions, Pope and Owens "made several public and private defamatory statements" regarding them. In particular, the former employees complain, their TYC personnel files were "coded" to reflect that Alvarez-Sanders and Logterman had "resigned in lieu of termination" and that all three were "ineligible for rehire without reason." They pled that these "defamatory statements" have caused them to "be subject to public ridicule and hatred and . . . suffer severe damage to their business and personal reputations."

Based on these allegations, Plaintiffs sought relief from the TYC Defendants[9] that centered on two requested declarations under the Uniform Declaratory Judgments Act (UDJA):[10]

- a declaration that section 37, which "attempted to remove the 'for cause' status of TYC employees employed before that [June 8, 2007] date," violates constitutional prohibitions against retroactive legislation, ex post facto laws, and bills of attainder; and

---

[9] In addition to naming the TYC and its current executive director, in her official capacity, as defendants, Plaintiffs also sued Owens and Pope individually. Additionally, Plaintiffs purported to sue Owens and Pope in their official capacities even though neither is currently employed by the agency. Because none of the individual defendants are (or can be) parties to this appeal, and because any formal distinctions between the TYC Defendants and the former officers in their official capacities are not material to our analysis (the agency-versus-officers-in-official-capacity distinction becomes relevant chiefly to prospective relief that would lie against the current executive director, *see City of El Paso v. Heinrich*, 284 S.W.3d 366, 372-73 (Tex. 2009) (explaining that suits seeking to restrain ultra vires acts of state officials "must be brought against the state actors in their official capacity")), we identify the defendants simply as the "TYC Defendants" for clarity and convenience. We have similarly corrected our caption, which originally bore, in error, the names of additional parties before the district court.

[10] *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2008).

- a declaration "that as a matter of law Plaintiffs were 'for cause' employees . . . after June 8, 2007, the effective date[] of Senate Bill 103."

Additionally, Alvarez-Sanders and Logterman sought "a declaratory judgment as to their 'for cause' status as TYC employees at the time of their termination, April 19, 2007." With these declarations, Plaintiffs prayed for attorney's fees as the UDJA permits.[11]

Plaintiffs further requested "prospective injunctive and/or equitable relief" barring "TYC and its officials from enforcing Section 37 of Senate Bill 103" and "the TYC administrative regulations that [are] derived from Section 37." Finally, the three former employee Plaintiffs prayed for money damages, including compensation for injury to reputation, lost earnings and earning capacity, and past and future mental anguish, based on theories of wrongful discharge, defamation, and the "taking" of their "property interests" in their TYC employment.

**"Plea to the jurisdiction and motion for summary judgment"**

The TYC Defendants responded with a single filing styled as a "Plea to the Jurisdiction and Motion for Summary Judgment."[12] In a section of the document titled "Plea to the Jurisdiction," the TYC Defendants asserted the following grounds challenging the district court's subject-matter jurisdiction over the claims against them:

- Plaintiffs' claims for money damages from the TYC Defendants implicate sovereign immunity and they have failed to plead a valid waiver of such immunity. In particular, the UDJA does not waive immunity to the extent of declaring a right to money damages,

---

[11] *See id.* § 37.009 (West 2008).

[12] The individual defendants also joined in the motion for summary judgment. Because only the grounds asserted by the TYC Defendants are pertinent to this appeal, we discuss only those.

9

Plaintiffs have not alleged any valid takings claim, and the Tort Claims Act does not waive immunity as to intentional torts like defamation.

• While the Texas Constitution authorizes "direct claims for equitable relief against governmental agencies for violations of . . . the Texas Bill of Rights," Plaintiffs have not asserted a request for equitable relief to remedy their alleged wrongful-termination/due-process violation concerning Alvarez-Sanders, Logterman, and Brantley.

• Although "TYC concedes that it is a proper party to this suit and that the [UDJA] waives its immunity" to the extent "Plaintiffs' declaratory judgment action challenges the validity of [section 37]," sovereign immunity bars any declaratory claims against TYC concerning alleged ultra vires conduct, which must instead be asserted against the executive director in his official capacity.

• In any event, none of the four plaintiffs possess a justiciable interest that could support their claims challenging the constitutionality of section 37:

  • Alvarez-Sanders and Logterman lack standing because they resigned prior to section 37's effective date and "have simply not alleged any future harm" that could give rise to a live justiciable interest on their part.

  • Castillo possesses no ripe justiciable interest.

  • Brantley's constitutional challenges are moot because he received all of the process to which he would have been entitled as a for-cause TYC employee.

• The declaratory claims asserted by Alvarez-Sanders, Logterman, and Brantley are also barred because they seek declarations as to issues that are already presented by their wrongful-termination claims. Additionally, because the district court lacks subject-matter jurisdiction over these plaintiffs' wrongful-termination claims, there is no justiciable controversy that could support their declaratory claims.

In the "summary judgment" portion of the filing, the TYC Defendants asserted that "Plaintiffs' declaratory judgment claim against TYC [and its executive director], in her official capacity . . . fails as a matter of law because [section 37] is not an ex post facto or retroactive law." In support of these grounds, the TYC Defendants asserted that the ex post facto law prohibition applies only to penal statutes, *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001); *Barshop v. Medina*

10

*County Underground Water Dist.*, 925 S.W.2d 618, 633-34 (Tex. 1996), and that Plaintiffs possessed no vested property right in the Legislature's continuing to grant them for-cause employment status, only a mere expectancy based on the anticipated continuation of current law. *See, e.g.*, *McMurtray v. Holladay*, 11 F.3d 499, 504 (5th Cir. 1993) ("The Supreme Court long ago established that, when a legislature extinguishes a property interest via legislation that affects a general class of people, the legislative process provides all of the process that is due.") (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982); *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445-46 (1915)).

In support of their plea to the jurisdiction, the TYC Defendants attached evidence that included, of relevance here, an affidavit from Dewey Poteet, a TYC in-house attorney who advises the agency on personnel matters.[13] Attached to Poteet's affidavit were copies of TYC's policies and procedures governing grievances by involuntarily terminated employees both before and after section 37's implementation, previously described. Also attached was correspondence to and from the agency relating to Brantley's termination and a grievance that he subsequently attempted to file with the agency. The documents and Poteet's testimony reflect that:

- On April 19, 2007, Pope provided Brantley a two-page recommendation-to-terminate letter advising him of what Pope perceived as several failures by Brantley to perform four "essential job functions" and her conclusion that his "continued employment is not in the best interest of the agency as it moves toward reform." The letter further notified Brantley that he had the right to raise with Owens "any facts regarding why you believe your

_____

[13] The TYC Defendants also attached documents reflecting an abortive attempt by Logterman and Alvarez-Sanders to litigate in federal court some of the same claims that Plaintiffs assert in this proceeding.

employment should not be terminated under these circumstances" before "any decision is made regarding your termination."

- On May 1, 2007, an attorney for Brantley wrote Owens asserting that the April 19, 2007 letter was insufficiently clear and specific regarding the factual bases for Brantley's termination, and requesting clarification.

- On May 15, 2007, Pope responded with a four-page amended recommendation-to-terminate letter that cited specific examples of what Pope regarded as Brantley's resistance to the reform initiatives of his superiors, failures to promptly respond to reports of physical abuse of youth in TYC facilities,[14] and poor judgment in promoting a TYC employee who was later disciplined for failure to "detect and address [a] pattern of sexual abuse at his facility."

- On May 25, 2007, Brantley personally wrote Owens a seventeen-page letter taking issue with Pope's assertions.

- On the same day, Brantley and his attorney met with Owens. During this meeting, according to Poteet, "both Dr. Brantley and Mr. Durst [his attorney] addressed the recommendation to terminate and the reasons why they urged rejection of the recommendation."

- Thereafter, as previously noted, S.B. 103 took effect on June 8, 2007. Subsequently, TYC amended its grievance policies, effective June 20, 2007, to eliminate the right to a grievance for employees who are terminated by the executive director.

- On June 22, 2007—two days after TYC amended its grievance policies to eliminate the right to a grievance for employees who (like Brantley) were terminated by the executive director—Owens wrote Brantley advising him that he was upholding Pope's recommendation to terminate his employment, and terminated Owens on that day. According to Poteet, "Dr. Brantley's response to the recommendation, both verbal and written, and the verbal and written response of Dr. Brantley's attorney, were considered by Mr. Owens before he acted on and accepted Ms. Pope's recommendation to terminate Dr. Brantley's employment."

Following his termination, the TYC Defendants' evidence reflects, Brantley attempted to file a grievance regarding his termination, as had been permitted under the agency's

---

[14] Pope specifically cited Brantley's failure to act on "some serious incident reviews regarding the superintendent at a facility having reportedly sprayed water onto two youths who had climbed a tree" and "complaints about a practice by which youth were kept at parade rest" for 55-minute intervals.

prior policies. However, TYC, Poteet explained, dismissed the grievance "on July 13, 2007, pursuant to the agency's grievance policy . . . because under the agency's grievance policy in effect at the time of Dr. Brantley's discharge . . . a decision to terminate employment made by the agency's executive director is not subject to the full grievance process."

Finally, in addition to his testimony regarding Brantley, Poteet further averred that Castillo had been continuously employed by TYC since 1994, "remains a TYC employee in good standing," and that the agency "has not recommended that [her] employment be terminated, nor is she under a threat of termination."

**Plaintiffs' response**

Plaintiffs filed a response in which they joined issue with both the TYC Defendants' "plea to the jurisdiction" and "summary judgment" grounds. In support, they attached evidence that included affidavits from each Plaintiff.[15] Material to our analysis, Alvarez-Sanders testified that, consistent with her pleading allegations, Pope had given her the choice of either resigning or being fired, gave her "15 minutes to make my decision," and that she had opted to resign out of fear of being "thrashed and humiliated in the press by the TYC and its officials." Alvarez-Sanders added that when she inquired as to the reason why Pope had taken this action, Pope "abruptly informed me that if I chose to not resign, the reasons would be presented at my termination hearing." Plaintiffs also attached affidavits from a former TYC general counsel, Neil Nichols, and a former

---

[15] The affidavits contain numerous unsupported legal conclusions to the effect that the Plaintiffs' for-cause status constitutes a "vested property right." *See City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) (observing that unsupported legal conclusions are not competent evidence and may not support a judgment even in the absence of an objection).

TYC human resources manager, Karen Giles, who purported to opine that the agency had not followed its procedures for involuntary termination of for-cause employees in connection with its "termination" of Alvarez-Sanders and Logterman. Furthermore, Alvarez-Sanders and Logterman averred that under TYC's personnel policies, the agency's coding of their personnel files to reflect that they resigned in lieu of termination and were ineligible for rehire implied that they had committed misconduct.

Also of relevance, Brantley averred that, generally consistent with the TYC Defendants' evidence, the agency had taken the position that he was not entitled to the grievance process and evidentiary hearing because, as of the date of his termination, the agency's grievance policies had been changed to make Owens's decision final. As for Castillo, she averred that, consistent with her pleading allegations, "since the effective date of Senate Bill 103, the TYC has classified me as an at-will employee" and "informed me that I no longer am a for cause employee as it relates to my employment with the TYC and the State of Texas." However, Castillo did not controvert Poteet's testimony that she had remained an employee in good standing and faced no threat of termination.

**Ruling**

A hearing was held at which no further evidence was presented. The record reflects that the parties and the district court addressed only the grounds designated within the "plea to the jurisdiction" portion of the TYC Defendants' filing and did not reach those raised within the "motion for summary judgment." Following the hearing, the district court partially granted the plea and dismissed all of the claims asserted by Brantley and Castillo, as well as Alvarez-Sanders's and

14

Logterman's "claims for defamation, constitutional takings, and declaratory judgment." The court did not elaborate as to the specific grounds on which it relied.

The district court's rulings left pending only Alvarez-Sanders's and Logterman's "claim for wrongful discharge." The court granted the plea and dismissed this "claim" "to the extent they seek to recover money damages" but denied it "to the extent they seek to recover equitable relief" under that theory. The court afforded Alvarez-Sanders and Logterman the opportunity "to replead their wrongful discharge claim to assert a claim for equitable relief against a proper state official, in his/her official capacity" within fifteen days thereafter. The district court did not, however, purport to immediately dismiss Alvarez-Sanders and Logterman's "claim for wrongful discharge to the extent they seek to recover equitable relief" from TYC, although compliance with the court's order would result in Plaintiffs non-suiting the agency by omission.

Both Plaintiffs and the TYC Defendants filed notices of appeal from the district court's order. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008); *see also id.* § 51.014(b) (West 2008) (automatic stay of trial court proceeding upon filing of notice of appeal under subsection (a)(8)).

**ANALYSIS**

Plaintiffs bring nine issues on appeal, while the TYC Defendants bring two.[16] The issues are most productively explained and analyzed according to the particular Plaintiff or Plaintiffs to whom they pertain.

---

[16] Several of the arguments asserted in the TYC Defendants' briefing in support of their cross-appeal are in substance responses to Plaintiffs' appellate arguments rather than grounds for altering the judgment in their favor or cross-points asserting alternative grounds for affirming the district court's judgment. We have analyzed them accordingly.

15

**Castillo**

Castillo, the sole Plaintiff currently employed at TYC, seeks only declaratory and injunctive relief predicated on a challenge to section 37's constitutionality. In their third issue, Plaintiffs urge that the district court erred in dismissing Castillo's claims for lack of ripeness.

Ripeness is in part an aspect of the justiciable controversy that is required before the judicial branch is constitutionally empowered to resolve a dispute. *See Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442-43 (Tex. 1998) (observing that ripeness and other justiciability doctrines derive in part from separation-of-powers principles and the constitutional prohibition against advisory opinions). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (quoting *Bexar-Medina-Atascosa Counties Water Control & Improvement Dist. No. 1 v. Medina Lake Prot. Ass'n*, 640 S.W.2d 778, 779-80 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.)). Ripeness is "peculiarly a question of timing"—specifically, whether the facts have developed sufficiently that a plaintiff has incurred or is likely to incur a concrete injury. *Perry v. Del Rio*, 66 S.W.3d 239, 249-51 (Tex. 2001) (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974)). Ripeness is thus said to be lacking where the case involves "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Patterson*, 971 S.W.2d at 442 (quoting 13A Charles A. Wright et al., *Federal Practice & Procedure* § 3532, at 112 (2d ed. 1984)).

As the basis for her claimed justiciable interest in obtaining declaratory and injunctive relief regarding section 37, Castillo pled that the agency "currently considers [her] to be an at

16

will employee, despite the fact that she was employed by the TYC before the effective date of Senate Bill 103." Similarly, as evidence of her justiciable interest, Castillo averred that "since the effective date of Senate Bill 103, the TYC has classified me as an at will employee" and that agency officials had advised her that they no longer considered her a for-cause employee. However, Castillo has neither alleged nor presented evidence that section 37 has had or is threatening to have any tangible impact on her. In fact, the TYC Defendants presented unconverted evidence negating that fact. *See Miranda*, 133 S.W.3d at 227. Namely, Poteet testified that Castillo "remains a TYC employee in good standing" and that the agency "has not recommended that [her] employment be terminated, nor is she under a threat of termination."

In urging that she nonetheless possesses a ripe, justiciable interest in her claims, Castillo emphasizes that one's status as a for-cause public employee is considered to create a property right in continued employment that is protected by procedural due process requirements. *See, e.g.*, *Loudermill*, 470 U.S. at 538-39. Consequently, Castillo reasons, she incurred an immediate concrete injury at the moment section 37 took effect and "divested" her of that property right. As Castillo explains her view on appeal, "where once [she] was clothed in the protection of a vested right and due process *before* termination, she has been stripped of her protection and stands naked before TYC without the rights she previously enjoyed." (Emphasis in original.) But this is merely a restatement of the fact that Castillo comes within the class of individuals whose terms of employment were altered by section 37—and that fact alone does not establish that she presently has a ripe, justiciable interest in challenging that enactment. A justiciable interest in regard to a statute requires more, "some actual or threatened restriction under that statute." *Texas Workers' Comp.*

17

*Comm'n v. Garcia*, 893 S.W.2d 504, 517-18 (Tex. 1995) (discussing the related concept of standing). And whether section 37 will ever have anything more than merely a theoretical effect on Castillo turns on at least two sets of contingencies: (1) whether her termination will ever occur or be threatened, and (2) TYC's specific actions in that event. Consequently, Castillo's asserted interest in the declaratory and injunctive relief rests upon the sorts of "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all" that characterize unripe claims. *Patterson*, 971 S.W.3d at 442; *see also Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 162 (1967) (holding that claims were not ripe where new regulations might never affect plaintiffs and where the impact of the regulation was not "felt immediately by those subject to it in conducting their day-to-day affairs"); *Garcia*, 893 S.W.2d at 33-34 (plaintiff lacked standing to assert constitutional challenge to new workers' compensation act where he "has submitted no claim for benefits under the Act, may never do so," and, if he ever did, "there is no way to predict what action the Commission may take on that claim"). Because the unconverted jurisdictional evidence negates the ripeness of Castillo's claims, the district court properly dismissed them for want of subject-matter jurisdiction. We overrule Plaintiffs' third issue.

**Alvarez-Sanders and Logterman**

### *"Wrongful termination"/due process*

Alvarez-Sanders and Logterman asserted theories of "wrongful termination" predicated on allegations that they were deprived of their procedural due process rights in their employment by being constructively discharged. While dismissing their claims under this theory to the extent they sought money damages, the district court denied the plea to the jurisdiction to the

18

extent of permitting Alvarez-Sanders and Logterman to replead, if possible, a viable claim for equitable relief against a state official. In their first issue on appeal, the TYC Defendants urge that this ruling was error because the record demonstrates an incurable jurisdictional defect such that repleading would be futile. *See Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 846 (Tex. 2007) (remanding to the trial court to dismiss claims with prejudice where pleadings were incurably defective). Specifically, the TYC Defendants contend that Plaintiffs' pleadings and the jurisdictional evidence negate an essential element of a viable due-process claim predicated on constructive discharge, that the employer forced the employees' resignations with the intent to deprive them of the procedural due process that would accompany involuntary termination. *See Fowler v. Carrollton Pub. Library*, 799 F.2d 976, 981 (5th Cir. 1986); *see University of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) (holding that although Texas Constitution refers to "due course" rather than the U.S. Constitution's "due process," the phrases are not meaningfully distinct and federal interpretations of procedural due process are persuasive authority when interpreting Texas's "due course" guarantee).

As a threshold matter, we question whether we have jurisdiction to consider this ground for dismissal in the context of this interlocutory appeal where, as here, there is no indication in the record that the TYC Defendants ever raised it before the district court. *See Austin Indep. Sch. Dist. v. Lowery*, 212 S.W.3d 827, 834 (Tex. App.—Austin 2006, pet. denied) (we consider plea that was filed and do not address whether the district court erred in denying the plea on a ground that was not argued below); *but see Texas State Bd. of Pub. Accountancy v. Bass*, No. 03-09-00251-CV, 2011 Tex. App. LEXIS 294, at *14-15 n.2 (Tex. App.—Austin Jan. 14, 2011, no pet.) (noting

apparent exception where plaintiff purported to assert an ultra vires claim directly against a state agency); *Rusk State Hosp. v. Black*, No. 12-09-00206-CV, 2010 Tex. App. LEXIS 4687, at *12 (Tex. App.—Tyler June 23, 2010, pet. granted) (declining to consider on interlocutory appeal jurisdictional challenges not presented to or ruled on by the trial court). In any event, we would not sustain the TYC Defendants' issue because we find no error in the district court's ruling as to these claims. We agree with the TYC Defendants that Alvarez-Sanders and Logterman failed to allege or present evidence that the TYC Defendants constructively discharged them with the intent to deprive them of procedural due process. However, we disagree that the pleadings and evidence affirmatively *negate* that element, as opposed to merely omitting it. Although Alvarez-Sanders and Logterman did not assert that the TYC Defendants intended to deprive them of due process, Plaintiffs asserted that they were given a choice to quit or be fired under "high-pressure" circumstances, and that when they asked why, "Pope replied that Plaintiffs would be told if and when they chose to be terminated." They further asserted that their requests to withdraw their resignations were denied, and they were not permitted to file grievances. Rather than demonstrating an incurable defect, the record reflects that Alvarez-Sanders and Logterman purported to assert a claim predicated on due-process violations through constructive discharge, but failed to include sufficient facts or allegations to support an element of that claim. Where, as here, the record fails to affirmatively demonstrate incurable defects in jurisdiction, the appropriate remedy is to grant leave to amend rather than to dismiss. *See Miranda*, 133 S.W.3d at 226-27.

The TYC Defendants further object that allowing Alvarez-Sanders and Logterman to replead to seek equitable relief under their wrongful-termination/due-process theory is futile

because they cannot seek reinstatement and would still lack standing to challenge section 37 in any event. Although we ultimately agree that Alvarez-Sanders and Logterman's claims for equitable relief do not create a justiciable interest on their part in the constitutional challenges, as we explain below, that conclusion alone does not render futile their opportunity to replead claims for equitable relief based on their wrongful-termination/due-process theory. As the TYC Defendants emphasize, these claims of Alvarez-Sanders and Logterman are based on facts that occurred months before section 37 took effect. Furthermore, they could conceivably seek equitable remedies other than reinstatement. *See Than*, 901 S.W.2d at 933 ("In general, . . . the remedy for a denial of due process is due process.").

In short, the district court did not err in denying the TYC Defendants' plea to the jurisdiction to the extent of permitting Alvarez-Sanders and Logterman the opportunity to replead their wrongful-termination/due-process claims to seek equitable relief from an appropriate state official (i.e., TYC's executive director). Having so held, however, the district court erred in failing to dismiss Alvarez-Sanders and Logterman's wrongful-termination/due-process claims to the extent they sought equitable relief from TYC itself. As the Texas Supreme Court has recently made clear, a suit for equitable relief to restrain official conduct that is ultra vires of an agency's statutory or constitutional powers must be asserted against a state official, in his or her official capacity, and sovereign immunity bars such a claim if asserted against the agency itself. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372-73 (Tex. 2009) (explaining that suits seeking to restrain illegal acts of state officials "cannot be brought against the state, which retains immunity, but must be brought against the state actors in their official capacity" because "'acts of officials which are not

21

lawfully authorized are not acts of the State'" (citation omitted)); *see Creedmoor-Maha*, 307 S.W.3d at 513, 516 n.8 (recognizing that a suit to restrain a state official's unconstitutional conduct is a type of ultra vires suit). Accordingly, we will reverse this portion of the district court's judgment and render judgment dismissing the wrongful-termination/due-process claims of Alvarez-Sanders and Logterman to the extent they are asserted against TYC. *See Bass*, 2011 Tex. App. LEXIS 294, at *14-15 n.2 (noting that Texas Supreme Court has apparently concluded that this ground for dismissal can be raised on appeal even in the context of a section 51.014(a)(8) interlocutory appeal).

### *"Defamation"*

In their fifth issue, Plaintiffs urge that the district court erred in dismissing the defamation claims of Alvarez-Sanders and Logterman.[17] Plaintiffs do not appear to dispute that sovereign immunity would bar a common-law tort claim for defamation, particularly one seeking money damages.[18] Seemingly recognizing this, Plaintiffs have attempted to recast the defamation claims they plead as instead seeking equitable relief to remedy constitutional violations. Before the district court, Plaintiffs attempted to recast these claims as seeking injunctive or declaratory relief to remedy "a lifelong scarlet letter/stigma" that amounted to a bill of attainder. On appeal, Plaintiffs have shifted focus to suggest that "[d]efamation may be likened to a claim against an employer for an unconstitutional deprivation of a liberty interest," and cite cases recognizing that due process may

---

[17] Within this issue, Plaintiffs also advance the same arguments with respect to the dismissal of Brantley's defamation claims.

[18] *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.057 (2) (West 2011) (tort claims act does not waive immunity as to claims arising out of an intentional tort); *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App.—Houston [1st Dist.] 1995, no writ) (acknowledging that the tort claims act does not waive immunity for intentional torts, including defamation).

22

be violated by a public employer's discharge of an employee under "stigmatizing" circumstances without giving the employee the opportunity to clear his or her name. *See Arrington v. County of Dallas*, 970 F.2d 1441, 1447 (5th Cir. 1992) ("A public employer may unconstitutionally deprive its employee of a liberty interest if it discharges him under stigmatizing circumstances without giving the employee an opportunity to clear his name."). We cannot conclude that the district court erred in dismissing these claims.

As a threshold matter, any claim for equitable relief from a constitutional violation would, again, be barred by sovereign immunity to the extent that Plaintiffs would purport to assert it against TYC. *See Heinrich*, 284 S.W.3d at 372-73. If any such claim were viable, it would lie instead against TYC's executive director. *See id.* And, as demonstrated by our detailed review of Plaintiffs' pleadings, and however liberally we might construe those pleadings, Plaintiffs did not plead any claim for equitable relief predicated on defamation or some related notion of stigmatization, much less one predicated on due process, the theory on which Plaintiffs apparently now rely. In this regard, we observe that, "[t]o assert a claim for the deprivation of this constitutional right to a name-clearing hearing, a plaintiff must allege that he was a public employee, that he was discharged, that stigmatizing charges were made against him in connection with his discharge, that the charges were false, that the charges were made public, that he requested a name-clearing hearing, and that the hearing was denied." *Id.* at 1447 (citing *Rosenstein v. City of Dallas*, 876 F.2d 392, 395-96 (5th Cir. 1989). Furthermore, as Plaintiffs recognize, the public charges must be so stigmatizing that they create a "badge of infamy" that destroys the employee's ability to obtain other employment. *Evans v. City of Dallas*, 861 F.2d 846, 851 (5th Cir. 1988).

23

Additionally, injury to a plaintiff's reputation does not, in itself, amount to a deprivation of this liberty interest. *See Siegert v. Gilley*, 500 U.S. 226, 233 (1991) ("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation."). The live pleadings fall far short of alleging the facts required to assert a viable due-process claim based on stigmatization. Nor can we find any indication in the record that Plaintiffs advanced such a theory, or sought leave to replead it, before the district court.[19] In short, we find no error in the district court's dismissal of Plaintiffs' defamation claims, and overrule their fifth issue.

### *"Takings"*

In their sixth issue, Plaintiffs urge that the district court erred in dismissing any of their claims predicated on the alleged "taking" of their property rights in continued employment.[20] However, as the TYC Defendants have pointed out, none of the Plaintiffs have asserted, or could assert, a viable takings claim predicated on the "taking" of a public employee's property right in continued employment. *See Bates v. Texas State Technical Coll.*, 983 S.W.2d 821, 826 n.8 (Tex. App.—Waco 1998, pet. denied) (rejecting takings claim by employee whose teaching contract was not renewed and stating that the court could "find no cases that hold that 'property' applies to an individual's property interest in continued employment."); *see also Seals v. City of Dallas*, 249 S.W.3d 750, 759 (Tex. App.—Dallas 2008, no pet.) (relying on *Bates* for the proposition that courts have refused to interpret the takings clause to protect an employee's interest in public

---

[19] We further observe that the second amended petition that is attached to the TYC Defendants' briefing does not purport to assert such a theory.

[20] As with their fifth issue, within their sixth issue Plaintiffs advance the same arguments with respect to the district court's dismissal of Brantley's takings claim.

employment); *De Mino v. Sheridan*, 176 S.W.3d 359, 368-69 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (relying on *Bates* to conclude that non-renewal of teaching contract could not give rise to takings claim; stating that "[plaintiff] directs us to no authority supporting his contention that his personal interest in employment at UH or elsewhere constitutes a 'property' right for purposes of the 'takings' clause"). Among other problems, the State cannot, as a matter of law, "take" a public employee's property right in continued employment "for public use" in the manner contemplated by the takings clause. *See Steele v. City of Houston*, 603 S.W.2d 786, 789 (Tex. 1980) ("The Constitution limits compensation to damages 'for or applied to public use,' and judicial restraints have narrowed that phrase to damages which arise out of or as an incident to some kind of public works."). Because these jurisdictional defects are incurable, the district court did not err in dismissing the takings claims. *See Miranda*, 133 S.W.3d at 227. We overrule Plaintiffs' sixth issue.

### UDJA

Alvarez-Sanders and Logterman assert two sets of claims for declaratory relief under the UDJA. First, they seek declarations that they had the status of for-cause employees in April 2007, as of the time of their alleged constructive discharges. The district court properly dismissed these claims because the requested declarations overlap elements of their wrongful-termination/due-process claims and "[a]n action for declaratory judgment will not be entertained if there is pending, at the time it is filed, another action or proceeding between the same parties and in which may be adjudicated the issues involved in the declaratory judgment action." *Texas Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 895 (Tex. 1970); *see BHP Petroleum Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) ("The Declaratory Judgments Act is 'not available

to settle disputes already pending before a court.'" (citations omitted)). Although Plaintiffs appear to question this rule in their seventh and eighth issues, those contentions are without merit, and we overrule them.

Second, Plaintiffs urge in their fourth issue that even though Alvarez-Sanders and Logterman were no longer TYC employees at the time section 37 took effect, their claims for equitable relief give rise to standing on their part to obtain declaratory and injunctive relief challenging that statute. Consequently, they reason, the district court erred in dismissing these claims. These arguments fail for reasons similar to their arguments regarding Castillo's claims.

As of the date section 37 took effect, Alvarez-Sanders and Logterman were no longer employees of TYC, and had not been for approximately two months. At that juncture, it was thus impossible for them to suffer the required "actual or threatened restriction under that statute" necessary for standing. *Garcia*, 893 S.W.2d at 517-18. That condition would continue to exist unless and until they could, in light of the foregoing holdings, (1) plead a viable claim for equitable relief based on wrongful termination, (2) prevail, and (3) the equitable relief they ultimately obtained would include reinstatement, such that section 37 would apply to them. These contingencies, to say the least, are far too remote and speculative at the present time to give rise to a justiciable interest on the part of Alvarez-Sanders and Logterman. *Patterson*, 971 S.W.2d at 442 (claim is unripe where the case involves "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all"); *see also Perry*, 66 S.W.3d at 249-51 (even in instances where claim might eventually ripen based on subsequent events, trial court must dismiss claim if, at time of adjudication, it is not ripe). We overrule Plaintiffs' fourth issue.

26

**Brantley**

Unlike the other Plaintiffs, Brantley was (1) formally terminated and (2) this event occurred after section 37 took effect. Like Alvarez-Sanders and Logterman, Brantley asserted "defamation" and "takings" claims and Plaintiffs challenge the dismissal of those claims on the same grounds they assert regarding the other two former employee Plaintiffs. We have already disposed of these contentions above.

Brantley also asserted a theory of wrongful termination predicated on the allegations that TYC discharged him without "due process," that is, without affording him the procedural protections to which for-cause TYC employees had been entitled. Additionally, like the other three Plaintiffs, Brantley asserted claims for declaratory and injunctive relief challenging section 37's constitutionality. The TYC Defendants attacked the district court's jurisdiction over these claims in part on the basis that the uncontroverted jurisdictional evidence establishes that Brantley was terminated only after receiving the same process that a for-cause employee would have received, rendering his claims moot. Consequently, they reasoned, there was no justiciable controversy regarding Brantley's claims. In his first issue, Brantley asserts that the district court erred in dismissing his claims for declaratory and injunctive relief challenging section 37's constitutionality. In his second issue, Brantley contends in the alternative that the district court erred in dismissing his wrongful-termination claim and that he should have been permitted to replead that claim to seek equitable relief, in the same manner that Alvarez-Sanders and Logterman were. We agree in part.

Although the jurisdictional evidence established that Brantley received pre-termination notice and an opportunity to respond consistent with TYC's former policies governing

27

involuntary terminations, it remains that Brantley did not receive all of the process to which he claims due process would have entitled him as a for-cause employee. Namely, Brantley was denied an evidentiary hearing on the grounds for his termination. The TYC Defendants tacitly acknowledge this fact in emphasizing that Brantley was not entitled to an evidentiary hearing under the grievance procedures in effect *after the agency amended them effective June 20, 2007* to eliminate the right to an evidentiary hearing where, as here, the executive director terminates the employee. Consequently, whatever interest Brantley possessed in obtaining the judicial relief he sought was not entirely extinguished by the process he received. The district court, therefore, would have erred in dismissing Brantley's claims based on a conclusion that they were moot.

On appeal, the TYC Defendants, in a supplemental brief, suggest that Brantley's claims should nonetheless be dismissed because he did not, as a matter of law, allege facts that constitute a constitutional violation. *See Creedmoor-Maha*, 307 S.W.3d at 513, 516 n.8. The TYC Defendants essentially reurge their arguments—styled as "summary judgment" grounds in the district court—that the ex post facto law prohibition applies only to penal statutes, *see Rogers*, 532 U.S. at 456; *Barshop*, 925 S.W.2d at 633-34, and that Plaintiffs possessed no vested property right in the Legislature's continuing to grant them for-cause employment status, only a mere expectancy based on the anticipated continuation of current law. *See, e.g.*, *McMurtray*, 11 F.3d at 504. The mere fact that the TYC Defendants labeled this jurisdictional challenge as a "summary-judgment" ground, as opposed to a ground in their plea to the jurisdiction, is not in itself dispositive of the TYC Defendants' contention. *See Austin State Hosp. v. Graham*, No. 10-0674, 2011 Tex. LEXIS 611 at *4-6 (Tex. Aug. 26, 2011) (explaining that an interlocutory appeal may be taken from a

28

refusal to dismiss for want of jurisdiction whether the jurisdictional argument is presented by plea to the jurisdiction or some other procedural vehicle). But, as Plaintiffs emphasize, the district court did not reach this ground for dismissal, however labeled. Under the precedents of this Court, as previously noted, we do not have jurisdiction in the context of this interlocutory appeal to reach this ground for dismissal, whatever its merits. *Lowery*, 212 S.W.3d at 834 ("we . . . do not address whether the district court erred in denying the plea on a ground that was not argued below.").

Like Alvarez-Sanders and Logterman, Brantley should be permitted to replead his wrongful-termination/due-process claim to seek equitable relief against a proper state official. To this extent, the district court erred in dismissing Brantley's wrongful-termination/due-process claim. However, the district court properly dismissed this claim to the extent he seeks monetary relief or seeks any relief from TYC. *Heinrich*, 284 S.W.3d at 372-74. Likewise, because Brantley's constitutional challenges under the UDJA seek declarations regarding issues that are already elements of his wrongful-termination/due-process claim, the district court did not err in dismissing his UDJA claims. *See Texas Liquor Control Bd.*, 456 S.W.2d at 895.

## CONCLUSION

We affirm the district court's order except in two respects. First, we reverse the district court's order to the extent it fails to dismiss the wrongful-termination/due-process claims of Alvarez-Sanders and Logterman against TYC. We render judgment dismissing those claims for want of subject-matter jurisdiction. Second, we reverse the district court's order dismissing Brantley's wrongful-termination/due-process claim to the extent it would seek equitable relief

29

against an appropriate state official. We render judgment that Brantley is to replead said claim against a proper state official within fifteen days of the date of this Court's judgment.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Henson;
    Justice Patterson not participating

Affirmed in part; Reversed and Rendered in part

Filed: October 12, 2011