# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00571-CV

Jessie F. McMaster, Jr., Appellant

v.

Public Utility Commission of Texas, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
NO. D-1-GN-11-000379, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This interlocutory appeal arises from a suit for judicial review of the Public Utility Commission's final order granting Lone Star Transmission, LLC permission to build an electric transmission line in north-central Texas. Appellant Jessie F. McMaster, Jr. challenges the district court's grant of the Commission's and Lone Star's pleas to the jurisdiction and resulting dismissal of his claims. Because the district court lacked jurisdiction over McMaster's claims, we will affirm the district court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

Lone Star, which constructs, operates, and maintains electric transmission facilities in Texas, is an electric utility subject to the Public Utility Regulatory Act. *See* Tex. Util. Code Ann. § 31.002(6) (West Supp. 2011) (defining "electric utility" as person who "owns or operates for compensation in this state equipment or facilities to produce, generate, transmit, distribute, sell, or

furnish electricity in this state"); *see generally id.* §§ 11.001–66.016 (West 2007 & West Supp. 2011) (establishing regulatory system for public utilities in Texas) ("PURA"). Under its legislative grant of authority from PURA, the Commission regulates public utilities in Texas, including electric utilities such as Lone Star. *See id.* § 14.001.

Among many other things, PURA requires electric utilities to obtain a certificate of convenience and necessity (CCN) before installing, operating, or extending a transmission line. *See id.* § 37.051(a). Generally stated, the procedure for obtaining the CCN begins with the submission of an application to the Commission, includes a contested-case hearing, and ends with the Commission's grant or denial of the CCN. *See id.* §§ 37.053–.056. During the contested-case hearing, the utility applicant, intervening parties, including potentially affected landowners, and the Commission may present evidence regarding the application. 16 Tex. Admin. Code §§ 22.201–.207 (2012) (Public Util. Comm'n of Tex., Hearings). To approve an application to obtain or amend a CCN, the Commission must find that the proposed CCN is "necessary for the service, accommodation, convenience, or safety of the public." *See* Tex. Util. Code Ann. § 37.056(a); *see also id.* § 37.056(c) (setting forth criteria for determination); 16 Tex. Admin. Code. § 25.101 (Public Util. Comm'n of Tex., Certification Criteria) (2012) (same). If the Commission grants the application, it must approve a route for the transmission lines that meets PURA and Commission rules. *See* 16 Tex. Admin. Code § 25.101(b)(3)(B). For certain CCN applications, including Lone Star's application here, *see infra* pp. 3 n.1, 5, if the Commission does not issue a final order on the CCN application within 180 days of the application's filing, "the application is approved." *See* Tex. Util. Code Ann. § 39.203(e).

2

As part of the Legislature's effort to encourage development and transmission of renewable energy sources, the Commission chose Lone Star in March 2010 to construct three transmission-line segments across parts of north-central Texas to serve the Central Competitive Renewable Energy Zone.[1] *See id*. §§ 39.203(e), 39.904. In connection with that selection, Lone Star filed an application with the Commission in May 2010 for a CCN to install those three transmission-line segments. One of these segments would cross parts of Bosque County near McMaster's property. To comply with PURA's notice requirements, Lone Star twice published notice of its CCN application in several newspapers and also mailed, via first-class mail, notices to those owners of land "directly affected" by the proposed transmission line route as identified by the tax-roll information supplied by the appropriate counties' tax assessor's office, including that of Bosque County. *See* 16 Tex. Admin. Code § 22.52(a) (2010) (Public Util. Comm'n, Notice in Licensing Proceedings) (requiring applicant to publish notice in newspaper and to send notices via

---

[1] In 2005, the Legislature enacted laws intended to encourage the development and transmission of renewable energy, such as wind energy, in Texas. *See* Act of July 14, 2005, 79th Leg., 1st C.S., ch. 1, §§ 1–4, 2005 Tex. Gen. Laws 1 (codified at Tex. Util. Code Ann. §§ 36.053(d), 39.203(e), 39.904(a), (g)–(n)). Among other things, this legislation required the Commission to designate "Competitive Renewable Energy Zones" (CREZs)—i.e., geographic regions of Texas identified as being the best suited for cost-efficient renewable energy development such as wind farms in West Texas. *See id*. § 2; Tex. Util. Code Ann. § 39.203(e) (West 2007). The legislation also required the Commission to develop and implement a plan to build the transmission lines needed to move electricity from the CREZ locations to the state's power grid. *Id*. § 2. The CREZ transmission project involves a collection of utility companies selected to build over 2,000 miles of high voltage transmission lines from West Texas to higher populated areas in the eastern portion of the state. *See* 16 Tex. Admin. Code §§ 25.173 (Public Util. Comm'n of Tex., Goal for Renewable Energy), 25.174 (Public Util. Comm'n of Tex., Competetive Renewable Energy Zones), 25.216 (2012) (Public Util. Comm'n of Tex., Selection of Transmission Service Providers); *Wind Energy*, Window on State Government, http:// www.window.state.tx.us/specialrpt/energy/renewable/wind (last visited July 19, 2012) (discussing this legislation in connection with wind energy in Texas).

first-class mail to nearby municipalities and "owners of land, as stated on the current county tax roll(s), who would be directly affected by the [CCN]") *amended* 36 Tex. Reg. 3178 (2011) (proposed 36 Tex. Reg. 1637).[2] Land is considered "directly affected" under this rule if an easement or other property interest would be obtained over all or any portion of it, or if it contains a habitable structure that would be within 300 feet of the centerline of a transmission project of 230kV or less, or within 500 feet of the centerline of a transmission project greater than 230kV.[3] *Id.* § 22.52(a)(3). Lone Star initially determined that McMaster's property fell within these parameters, thus entitling McMaster to notice under this provision. However, the notice was incorrectly mailed to the neighboring property owner, who testified in deposition that she told McMaster about Lone Star's application and advised McMaster to investigate the matter.[4] McMaster subsequently attended at least two property-owners' meetings where the CCN application, the proposed transmission-line route, the property owners' concerns, and the Commission's application procedure were discussed. Further, the undisputed evidence presented during the contested-case hearing established that, contrary to Lone Star's initial determination, McMaster's land did not fall under the Commission rule's definition of "land directly affected"—i.e., the transmission line would not cross McMaster's

---

[2] Although the Commission's 2011 changes to this notice rule do not appear to affect our resolution of this matter, we cite to the version of this rule in existence during the pendency of the administrative proceeding. *See* 36 Tex. Reg. 3178 (2011) (codified at 16 Tex. Admin. Code § 22.52) (proposed Feb. 28, 2011).

[3] The letters "kV" are an abbreviation for kilovolt. *See* 16 Tex. Admin. Code § 25.5(144) (2012) (Public Util. Comm'n of Tex., Definitions).

[4] McMaster denied that the neighbor provided him with a copy of the notice, but acknowledged that the neighbor told him about the notice, that the notice involved McMaster's property, and that McMaster should attend a property-owners' meeting to get more information.

4

property and McMaster's land did not have a habitable structure within 500 feet of the centerline of any proposed route. *See id.* (identifying property owners entitled to notice of CCN application).[5]

The Commission assigned the hearing on the application to the State Office of Administrative Hearings. The two administrative law judges (ALJs) received evidence and heard testimony over the course of a seven-day hearing, then issued a proposal for decision on October 22, 2010, recommending that the Commission approve Lone Star's CCN application. The Commission heard public comment on the CCN application at its open meeting on November 10, 2010, and then issued its final order adopting the ALJs' proposal for decision on November 17, 2010, or approximately four days before its statutory deadline to issue its order in this matter. *See* Tex. Util. Code Ann. § 39.203(e) (providing that, for CREZ-related applications, if Commission does not issue order by 181st day, application is approved). As adopted by the Commission, the route for Lone Star's transmission line will not cross McMaster's property; the transmission line will be located approximately 200 feet from McMaster's nearest property line and more than 500 feet from the habitable structure on his property; Lone Star will not acquire an easement or any other property interest over McMaster's property; and Lone Star will not install access roads, storage sites, or other facilities on McMaster's property. The Commission's final order also found that Lone Star had provided "proper notice of the application in compliance with" PURA section 37.054 and Commission rule 22.52(a). *See id.* § 37.054 (regarding notice and hearing on CCN application); 16 Tex. Admin. Code § 22.52(a) (regarding notice in licensing procedures).

---

[5] During the contested-case hearing, the Commission and Lone Star thought that McMaster's property was within the directly affected area, but Lone Star's survey subsequent to the Commission's final order showed that McMaster's land is just outside of the area.

On December 9, 2010—almost one month after the Commission issued its final order approving Lone Star's CCN application and at least fifteen days after the Commission's statutory deadline to issue an order in the matter—McMaster filed a motion to intervene in the proceeding, asserting that he was entitled to intervene as a "matter of right" because he was the owner of "directly affected land." *See* 16 Tex. Admin. Code § 22.104 (2012) (Public Util. Comm'n, Motions to Intervene). He also complained that Lone Star did not mail him notice of its CCN proceeding, he never received written notice of the proceeding, and asserted that he was unaware of the CCN application until after the contested-case hearing. The Commission denied McMaster's motion. McMaster then filed a motion for reconsideration, but the Commission never acted on this motion.

McMaster filed this suit in Travis County district court seeking review of the Commission's order granting Lone Star's CCN application.[6] In his petition, McMaster asserted that his federal and state due-process rights were violated by Lone Star's failure to notify the landowners directly affected by its CCN application as required by the Commission's rules. He asked the district court for injunctive and mandamus relief reversing the Commission's final order and requiring the Commission to allow him to intervene and grant him a full hearing. After the parties conducted discovery regarding McMaster's claims, both the Commission and Lone Star filed pleas to the jurisdiction. The district court subsequently granted these pleas and dismissed McMaster's claims with prejudice, leaving the remaining plaintiffs' claims. It is from this interlocutory order

---

[6] There were also other plaintiffs to this suit. Generally stated, they challenged the Commission's final order on the grounds that some of its findings were irrelevant or not supported by substantial evidence and that the accelerated procedure under the utilities code and Commission rules denied them due process. According to the briefing, those claims are still before the district court.

that McMaster now appeals. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008) (allowing interlocutory appeal of district court order granting or denying a plea to the jurisdiction by a governmental entity).

## ANALYSIS

McMaster raises five issues on appeal. The first four address whether the district court had jurisdiction over McMaster's claims. Specifically, McMaster argues that the district court has jurisdiction over his suit because (1) his lack of "party" status in the underlying Commission proceedings should not be a jurisdictional bar to his suit for judicial review when the Commission improperly denied his motion to intervene; (2) the Commission's final order deprived him, without due process, of his "Constitutionally-protected right to intervene"; (3) the Commission's final order deprived him, without due process, of his vested real-property interests because the "electro-magnetic radiation" from the transmission lines may "cross [his] property line and impact[] his family in his house" and devalue his property; and (4) his suit does not require a waiver of sovereign immunity because he seeks "equitable remedies for constitutional violations [that] are allowed without State's consent." McMaster's final issue on appeal complains that the district court improperly considered other "non-jurisdictional" grounds in deciding the Commission's and Lone Star's pleas to the jurisdiction.

**Standard of review**

Sovereign immunity deprives a trial court of subject-matter jurisdiction in suits against the State or certain governmental units unless the state consents to suit. *Texas Dep't of Parks*

7

& *Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.051 (West 2005). Because sovereign immunity, if not waived, defeats a trial court's subject-matter jurisdiction, it is properly asserted in a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225–26. Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *See id.* at 226.

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Id.* (citing *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002)). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.*

We must also consider evidence presented below that is relevant to the jurisdictional issues, *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000), including evidence presented to negate the existence of facts alleged in the plaintiff's pleading. *Brantley v. Texas Youth Comm'n*, 365 S.W.3d 89, 94 (Tex. App.—Austin 2011, no pet.); *see Miranda*, 133 S.W.3d at 227; *Combs v. Entertainment Publ'n, Inc.*, 292 S.W.3d 712, 719 (Tex. App.—Austin 2009, no pet.) (summarizing distinct standards governing evidentiary challenges to existence of pleaded

8

jurisdictional facts when such facts implicate both jurisdiction and merits versus when they implicate only jurisdiction). Our ultimate inquiry is whether the plaintiff's pleaded and un-negated facts, taken as true and liberally construed with an eye to the pleader's intent, would affirmatively demonstrate a claim or claims that fall within the trial court's subject-matter jurisdiction. *Brantley*, 365 S.W.3d at 94; *see Miranda*, 133 S.W.3d at 226; *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 513, 516 & n.8 (Tex. App.—Austin 2010, no pet.). This presents a question of law that we review de novo. *Brantley*, 365 S.W.3d at 94; *see Miranda*, 133 S.W.3d at 226; *Creedmoor-Maha*, 307 S.W.3d at 513, 516 n.8.

**Subject-matter jurisdiction**

Our decision in *Coastal Habitat Alliance v. Public Utility Commission*, 294 S.W.3d 276 (Tex. App.—Austin 2009, no pet.), controls our disposition of this case. *Coastal*, like the present case, involved a suit for judicial review of the Commission's order in a CCN application by a plaintiff whose motion to intervene in the underlying CCN proceeding had been denied by the Commission. *See id.* In deciding that the district court did not have jurisdiction over the plaintiff's claim, we held that the APA "does not authorize a non-party . . . to independently pursue judicial review of a final order or decision of the Public Utility Commission" because PURA only authorizes a "*party* to a proceeding before the Commission," Tex. Util. Code Ann. § 15.001 (emphasis added), to seek judicial review of a Commission order. *Coastal*, 294 S.W.3d at 279–81 (also determining that Commission's denial of the plaintiff's motion to intervene was a matter committed to Commission's discretion). Here, there is no dispute that McMaster was not a party to the CCN proceeding. Accordingly, the district court lacked jurisdiction over McMaster's claims and properly

9

granted the pleas to the jurisdiction.  *See id.*; *see also City of Port Arthur v. Southwestern Bell Tel. Co.*, 13 S.W.3d 841, 844 (Tex. App.—Austin 2000, no pet.) (holding that entity that has not intervened or has been denied permission to intervene in a Commission proceeding does not have the statutory right to judicial review of the Commission's proceeding).

McMaster argues that we should not apply *Coastal* to the facts of this case, however, because, as "an owner of land directly affected by the requested [CCN]" who never received "direct notice" of the CCN proceeding—according to McMaster, a mailed copy of the notice directly from Lone Star—he was entitled to intervene in the Commission proceedings as a matter of right:

> In an electric licensing proceeding in which a utility did not provide direct notice to ***an owner of land directly affected by the requested certificate***, late intervention shall be granted ***as a matter of right*** to such a person, provided that the person files a motion to intervene within 15 days of actually receiving the notice.  Such a person should be afforded sufficient time to prepare for and participate in the proceeding.

16 Tex. Admin. Code § 22.104(d)(4) (emphases added).  According to McMaster, applying *Coastal* here would essentially allow the Commission to "evade judicial review of its actions by simply refusing to allow a landowner to participate as a party even when the agency's rules state that the landowner can intervene 'as a matter of right.'"  We disagree.

First, the evidence in the record shows that McMaster was not "an owner of land directly affected by the requested certificate" because the approved transmission line that was the subject of the CCN would not cross his property—i.e., requiring an easement—and he did not own a habitable structure that would be within 500 feet of the centerline of the constructed transmission line—

10

> For purposes of this paragraph, land is directly affected if an easement or other property interest would be obtained over all or any portion of it, or if it contains a habitable structure that would be within 300 feet of the centerline of a transmission project of 230kV or less, or within 500 feet of the centerline of a transmission project greater than 230kV.

*See id.* § 22.52(a)(3) (requiring applicant to mail notice of its application to owners of land who would be "directly affected" by the CCN). As such, McMaster was not entitled to notice of the CCN proceeding. More importantly, however, McMaster was not "an owner of land directly affected by the requested" CCN entitled to intervene in the proceeding "as a matter of right" under the Commission's rule on intervention. *See id.* § 22.104(d)(4).

Further, even if McMaster were considered a "directly affected" owner of land, he would not be entitled to intervene under rule 22.104(d)(4) because he failed to file a motion to intervene "within 15 days of actually receiving the notice." *See id.* The evidence in the record shows, and McMaster acknowledges, that he had *actual* knowledge of Lone Star's CCN proceedings by September 2010, but that he did not file his motion to intervene until December 2010. As such, his window to intervene under this rule had closed well before he filed his motion. McMaster disagrees, contending that "actually receiving the notice" could only occur when he received a copy of the written notice that Lone Star was required to mail to him via first-class mail. *See id.* § 22.52(a)(3). In making this assertion, McMaster focuses on the word "the" in the phrase "the notice," arguing that its use in rule 22.104(d)(4) necessarily means that the Commission was referring to the applicant's direct notice of the application—i.e., the mailed notice—rather than actual notice of the application and the Commission proceedings. But that is an absurd interpretation of this rule, namely because it would allow a person who had actual knowledge of

11

the CCN proceeding to wait until after resolution of the matter—i.e., after all the other parties expended considerable time and money on the issue—to step forward with a complaint. It would also, in some cases like this one, thwart the statutory directive that the Commission issue an order on the CCN application by the 181st day after the CCN application was filed. *See* Tex. Util. Code Ann. § 39.203(e). Likewise, it would thwart the stated purposes of the Commission's rules that these proceedings be just and efficient. *See* 16 Tex. Admin. Code § 22.1(a) (2012) (Public Util. Comm'n of Tex., Purpose and Scope) ("The purpose of this chapter is to provide a system of procedures . . . that will promote the just and efficient disposition of proceedings and public participation in the decision-making process."). Finally, to the extent that the Commission's use of the phrase "the notice" is susceptible to more than one meaning, we would defer to the Commission's interpretation that "actually receiving the notice" includes actual knowledge of the CCN proceedings because that interpretation is reasonable and not plainly erroneous. *See Public Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex. 1991) (requiring deference to Commission's construction of its own rules, unless its interpretation is plainly erroneous).

McMaster also raises a due-process argument, asserting that, regardless of whether he has a statutory right to judicial review of the Commission's order under PURA or the APA, he is nevertheless entitled to judicial review of the Commission's order because it has the effect of depriving him of vested property and constitutional rights without due process. *See* U.S. Const. amend. XIV, § 1 ("No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."); Tex. Const. art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, . . . except by the due course of the law of the land.");

12

*Coastal*, 294 S.W.3d at 285 (noting that a party may have a right to judicial review of an administrative order in absence of legislative waiver of sovereign immunity if the order deprives the person of property without due process). Due process, of course, is implicated when the state or its agents deprive a person of a protected liberty or property interest. *See Board of Regents v. Roth*, 408 U.S. 564, 569 (1972); *Coastal*, 294 S.W.3d at 285. If a constitutionally protected property interest is at stake, we must then determine what process is due to sufficiently protect that interest. Thus, to review McMaster's due-process claim, we first determine whether he has been deprived of a property interest that is entitled to due-process protection and then, if he has, we must determine what process is due. *See Harrell v. State*, 286 S.W.3d 315, 319 (Tex. 2009) (citing *University of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995)); *Coastal*, 294 S.W.3d at 286 (noting that "our first inquiry in a procedural due process claim is whether the plaintiff has been deprived of a property or liberty interest deserving protection"). At a minimum, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Than*, 901 S.W.2d at 930.

As to what his property interests are, McMaster offers that (1) he has "concerns about electro-magnetic radiation crossing [his] property line and impacting his family in his house" and "concerns about the diminution in the value of his property . . . attributable to electro-magnetic radiation from the high-voltage transmission line"; and (2) he has a vested right to intervene in the Committee proceedings under the Committee's own rules. Regarding the first, while he obviously has a property interest in his own land, we do not see that the Commission's order has deprived him of any interest in that land. As we already discussed, he was not entitled to notice as a "directly

13

affected" landowner because Lone Star does not have an easement to his property and he does not own a habitable dwelling within 500 feet of the transmission line's center line. *See* 16 Admin. Code § 22.52(a)(3) (defining who are property owners directly affected by the CCN). Moreover, McMaster's concern that electromagnetic radiation may affect his property or devalue it is too speculative to be considered a deprivation of property rights when he has made no concrete assertions regarding the amount of the emissions or the type of resulting harm and in light of the fact that his habitable structure is outside the Commission's notice parameters. *See* Texas, Public Utility Commission of Texas, *Health Effects of Exposure to Powerline-Frequency Electric and Magnetic Fields*, Electro-Magnetic Health Effects Committee, Public Utility Commission of Texas (1992) (concluding that evidence at time was insufficient to support a conclusion that exposure to EMF poses an imminent or significant public health risk).

As to McMaster's second property interest—i.e., the right to intervene in the CCN proceeding—we would refer to our holding in *Coastal* that "a person's desire to intervene in a proceeding before the Commission is not a vested property interest entitled to protection under federal and state constitutions." *Coastal*, 294 S.W.3d at 286. But McMaster asserts that *Coastal* does not apply here because, unlike the plaintiffs in *Coastal*, he has the right to intervene "as a matter of right" as an owner of land directly affected by the CCN application. *See* 16 Tex. Admin. Code § 22.104(d)(4). As previously discussed, however, McMaster does not fall under the Commission's definition of "directly affected" and, as such, does not have a right to intervene as a matter of right. Further, even if he did fall under that definition, he failed to file a timely motion to intervene as discussed above.

Finally, even if we were to assume that the Commission's order deprived McMaster of a vested property or constitutional right, McMaster's pleadings and the evidence conclusively demonstrate that he received due process. First, McMaster had actual notice of the CCN proceeding months before the Commission's order. *See Pierce v. Texas Racing Comm'n*, 212 S.W.3d 745, 758 (Tex. App.—Austin 2006, pet. denied) ("[E]vidence that a party received actual notice of a hearing may defeat the party's claims on appeal for due process violations."); *see also United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1378 (2010) (noting that actual notice "more than satisfies" due process rights). Second, the record shows, and the Commission concluded, that Lone Star complied with the Commission's notice rules. *See* 16 Tex. Admin. Code § 22.52(a). And those rules, requiring publication in local newspapers and direct mailing to property owners identified in the county tax rolls, generally satisfy constitutional requirements: "As to Constitutional concerns, actual notice is not and has never been the standard for determining whether due process has been afforded a litigant. Rather, due process only requires notice, reasonably calculated under the circumstances, to be given." *Withrow v. Schou*, 13 S.W.3d 37, 40–41 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (citing *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 82 (1988); *Walker v. Brodhead*, 828 S.W.2d 278, 280 (Tex. App.—Austin 1992, writ denied)). Likewise, the Commission notice rule does not require or contemplate that every "directly affected" landowner actually receive notice: "The lack of actual notice to any individual landowner will not in and of itself support a finding that the requirements of [the notice provision] have not been satisfied." 16 Tex. Admin. Code § 22.52(a)(3)(E). Accordingly, the Commission's rules provide, and McMaster received, due process here.

15

We overrule McMaster's first four issues. Because we hold that the district court lacked jurisdiction over McMaster's claims for the reasons stated above, we need not address McMaster's fifth and final issue, which complains that the district court improperly considered other "non-jurisdictional" grounds in deciding the Commission's and Lone Star's pleas to the jurisdiction.

## CONCLUSION

Having overruled McMaster's issues on appeal, we affirm the district court's order granting the Commission's and Lone Star's pleas to the jurisdiction and dismissing McMaster's claims.

_____

Jeff Rose, Justice

Before Justices Pemberton, Henson and Rose

Affirmed

Filed:   August 31, 2012