# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00136-CV

**Texas Health and Human Services Commission; and Cecile Erwin Young, Executive Commissioner of the Texas Health and Human Services Commission, Appellants**

**v.**

**Sacred Oak Medical Center LLC, Appellee**

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-000074, THE HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Texas Health and Human Services Commission and its Executive Commissioner, Cecile Erwin Young, (collectively, the Commission) bring this interlocutory appeal from the trial court's order denying the Commission's plea to the jurisdiction and granting a temporary injunction in favor of appellee Sacred Oak Medical Center LLC. The temporary injunction restrained the Commission from enforcing its December 21, 2020 Notice of Violation ("December 2020 Notice") denying Sacred Oak's license-renewal application and ordering the psychiatric hospital's immediate closure. The temporary injunction further required the Commission to take all actions necessary to restore Sacred Oak to the operational status quo that existed before the Commission's enforcement of the December 2020 Notice, including reinstating any state license or certification from the Commission that Sacred Oak held on December 20, 2020. We affirm the trial court's order for the reasons stated below.

## BACKGROUND

The parties entered into an Agreed Order on October 1, 2019, that resolved two Notices of Violations that the Commission had issued to Sacred Oak on April 18, 2019, and June 5, 2019, and a proposed administrative penalty. The Agreed Order probated the denial of Sacred Oak's license-renewal application for a period of twelve months, subject to Sacred Oak's compliance with the terms of the Agreed Order, which among other things, required Sacred Oak's facility to hire an outside consultant approved by the Commission to create a corrective-action plan. The plan was to identify specific actions to be taken "to achieve sustained compliance with all applicable statutes and regulations" and to provide the Commission with monthly reports detailing Sacred Oak's progress in implementing the specific actions identified in the plan and confirming whether Sacred Oak was sustaining compliance with all applicable statutes and regulations. The Agreed Order allowed the Commission to deny the license renewal at any time during the probation period if it found Sacred Oak had not made sufficient progress in implementing the plan and achieving sustained compliance. The Agreed Order further provided that upon completion of the corrective-action plan, Sacred Oak was to request a survey by the Commission, and if the Commission did not find that Sacred Oak had "achieved sustained compliance with all applicable statutes and regulations by the end of the Probation Period, the Commission may deny the license renewal." In December 2020, after conducting the required post-probation survey, the Commission issued a Notice of Violation letter notifying Sacred Oak that it had identified certain deficient practices, and consequently, that it found that Sacred Oak had not achieved sustained compliance with all applicable statutes and regulations. The Notice of Violation also informed Sacred Oak that, based on its finding of failure to achieve sustained compliance, the Commission was denying Sacred Oak's license renewal.

On January 7, 2021, Sacred Oak sued the Commission, arguing that the Commission's December 2020 Notice of Violation failed to find that Sacred Oak did not comply with applicable statutes and regulations that were the subject of the Notices that led to the Agreed Order. *See* Tex. Health & Safety Code § 577.016(f) (establishing that facility in repeated noncompliance may be scheduled for probation and that "[d]uring the probation period, the hospital or facility must correct the items that were in noncompliance and report the corrections to the department for approval"). In its petition, Sacred Oak contends that to the extent the Commission alleged the occurrence of different violations during the probation period as the basis for denying its renewal application, Sacred Oak is entitled to a hearing and an opportunity to demonstrate or achieve compliance before the Commission could deny its renewal application and order it to close.[1] *Id.* § 577.016(b).

Sacred Oak seeks judicial review of the December 2020 Notice, asserting that although it submitted a request for a hearing on the December 2020 Notice, the Commission had advised it that the request would be refused because the Commission's decision is final. *Id.* § 577.018. Sacred Oak also seeks a declaratory judgment that the denial of its license renewal and closure of its hospital are void as ultra vires acts that violate the Texas Health and Safety Code and Texas Administrative Code because these actions were taken without allowing Sacred Oak to exhaust its administrative remedies. Finally, it seeks injunctive relief requiring the Commission

---

[1] The parties dispute the construction of certain clauses in the Agreed Order, including a clause in which Sacred Oak "waives the right to a hearing or an appeal regarding the Commission findings, assessment of the proposed administrative penalty and disposition of this case through the Commission's issuance of an Order," and another clause stating that "[t]he Commission does not waive the right to enforce this Order or to prosecute any other violations that Respondent may hereafter commit. The Commission shall consider this Order and Respondent's compliance history in the processing of any other enforcement actions and the imposition of any subsequent penalty."

to withdraw its December 2020 Notice, pending the administrative processes established by Texas Administrative Code Section 510.83 and Texas Health and Safety Code Section 577.016.

On February 1, 2021, the trial court conducted a hearing on the Commission's plea to the jurisdiction and Sacred Oak's application for temporary injunction. At the hearing, the Commission informed the court that although Sacred Oak's application to the Commission for an appeal of the December 2020 Notice had been docketed with its appellate division, the Commission intended to argue that Sacred Oak is not entitled to an administrative appeal, based on the waiver clause in the Agreed Order.

On March 22, 2021, the trial court issued its order denying the plea to the jurisdiction, granting Sacred Oak's application for temporary injunction, and granting the Commission's motion to quash subpoenas for certain witnesses to appear at the temporary-injunction hearing. In its order, the trial court made the following findings to support its grant of the temporary injunction:

> Finding that Sacred Oak has demonstrated the likelihood of success on the merits at trial, including that the December 21, 2020 Order . . . may violate Texas Administrative Code § 510.83 by purporting to deny Sacred Oak's application for renewal of its hospital license without providing prior notice of same, prior opportunity to demonstrate or achieve compliance, and prior opportunity for a hearing; and

> Finding that irreparable harm and economic injury will be sustained by Sacred Oak by the continued closure of the hospital and consequent disruption of its business with the enforcement of the [December] Order . . . .

As a result, the trial court ordered that:

> [the Commission] is RESTRAINED from enforcing the [December] Order and that [the Commission] shall immediately take all actions within its jurisdiction that are necessary to restore Sacred Oak to the operational status quo that existed prior to

[the Commission's] enforcement of the Order, which shall include reinstating and returning any state license or certification from [the Commission] held and/or possessed by Sacred Oak on December 20, 2020, and thereafter terminated and/or removed as a result of [the Commission's] efforts to enforce the Order (the "Licenses", *e.g.*, Psychiatric Hospital License No. 100390, issued to Sacred Oak on May 26, 2017). In the event that a document evidencing any such License was physically destroyed on or after December 21, 2020, [the Commission] shall immediately issue or cause to be issued a new such document to Sacred Oak. [The Commission] is further directed to immediately update its electronic records to reflect that the Licenses are valid and existing, that Sacred Oak's credentials reflect the status quo that existed on December 20, 2020, and that Sacred Oak can practice/operate in the State of Texas as it was authorized to do so on December 20, 2020[.]

The trial court further ordered that the case is abated pending the outcome of the administrative hearing docketed at the Commission and exhaustion of administrative remedies, but that "[s]uch abatement does not affect and will not restrict the Court's enforcement of this order and the temporary injunction enjoining [the Commission's] termination of the license, which shall in any event remain in place pending a final hearing in this proceeding[.]" The trial court set a final hearing in the matter for October 11, 2021. The Commission appeals from this order.[2]

## ANALYSIS

The Commission challenges the trial court's order in two issues. First, the Commission asserts that the trial court erred by denying its plea to the jurisdiction because Sacred Oak waived the right to a hearing or appeal of the denial of its license-renewal application in the Agreed Order, and the Commission acted within its discretion by denying Sacred Oak's license-

---

[2] After the appeal was filed, this Court granted Sacred Oak's emergency motion for a Rule 29.3 temporary order. We ordered that the trial court's temporary injunction was reinstated and that it remains in effect, pending disposition of the appeal. *Texas Health & Human Servs. Comm'n v. Sacred Oak Med. Ctr. LLC*, No. 03-21-00136-CV, 2021 WL 2371356, at *2, *7 (Tex. App.— Austin June 9, 2021, order) (per curiam).

5

renewal application. Second, the Commission argues that the trial court abused its discretion by issuing the temporary injunction because Sacred Oak failed to prove that it met any of the required elements for issuance of a temporary injunction.

## I.     Plea to the Jurisdiction

### A.     Standard of Review

A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject-matter jurisdiction without regard to whether the asserted claims have merit. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). We review the trial court's ruling on a plea to the jurisdiction de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction. *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). We begin our analysis by determining if the plaintiff has "alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226; *see also Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016). When making this determination, we construe the pleadings liberally in the plaintiff's favor, taking them as true, and looking to the plaintiff's intent. *Miranda*, 133 S.W.3d at 226.

We may also consider evidence that the parties have submitted that is relevant to the jurisdictional issues, and we must do so when necessary to resolve those jurisdictional issues. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). A party may present evidence to negate the existence of a jurisdictional fact alleged in the pleadings, which we would otherwise presume to be true. *See Miranda*, 133 S.W.3d at 227. In this case, the relevant evidence presented

6

by the parties includes the various Notices of Violation, the Agreed Order, and the letter docketing Sacred Oak's appeal of the December 2020 Notice to the Commission's Appeals Division.

To the extent the challenge implicates the merits of the plaintiff's cause of action, the party asserting the plea has the burden of negating a genuine issue of material fact as to the jurisdictional fact's existence, in a manner similar to a traditional summary-judgment motion. *See id.* at 227-28. We review the evidence in the light most favorable to the nonmovant to determine whether a genuine issue of material fact exists. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (citing *Miranda*, 133 S.W.3d at 221, 227-28). "Our ultimate inquiry is whether the plaintiff's pleaded and un-negated facts, taken as true and liberally construed with an eye to the pleader's intent, would affirmatively demonstrate a claim or claims within the trial court's jurisdiction." *Brantley v. Texas Youth Comm'n*, 365 S.W.3d 89, 94 (Tex. App.—Austin 2011, no pet.).

In its plea to the jurisdiction and on appeal, the Commission argues that the trial court lacks jurisdiction over Sacred Oak's claims because Sacred Oak waived its right to appeal the denial of its license-renewal application, including any right to judicial review, in the Agreed Order. Alternatively, the Commission argues that even assuming that Sacred Oak is entitled to a hearing and appeal, despite the alleged waiver in the Agreed Order, it must first exhaust its administrative remedies in the hearing that it requested, which was docketed by the Commission's separate appeals division. In addition, the Commission argues that Sacred Oak failed to plead a proper ultra vires claim for several reasons, including that the Commission acted within its discretionary authority when it denied Sacred Oak's license-renewal application.

7

**B.      Waiver Language in the Agreed Order**

We must construe various provisions of the Agreed Order to determine whether Sacred Oak waived its right to appeal the Commission's denial of its license-renewal application. The Commission argues that in exchange for the execution of the Agreed Order, Sacred Oak waived its "right to a hearing or appeal regarding the Commission findings . . . and disposition of this case through the Commission's issuance of an Order." Moreover, the Agreed Order provided for a Commission survey of Sacred Oak after it completed its required corrective-action plan, and if the Commission did not "find [Sacred Oak has achieved *sustained compliance with all applicable statutes and regulations* by the end of the Probation Period, the Commission may deny the license renewal." (Emphasis added.) The Commission argues that this plain language makes clear that Sacred Oak had to achieve compliance with *every* applicable statute and regulation during the probationary period, not just the ones that the Commission had previously notified Sacred Oak that it had violated and that were the impetus for the Agreed Order. Sacred Oak, on the other hand, points to several other provisions in the Agreed Order that it contends show, when read in the context of the entire agreement, that it did not intentionally relinquish or abandon its right to notice and a hearing on any new violations alleged by the Commission to have occurred during Sacred Oak's probationary period. *See Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 6-7 (Tex. 2014) (explaining "waiver" is defined as "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right" (quoting *Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987))).

Courts apply contract principles to ascertain and give effect to the parties' intentions as expressed in agreed orders. *See, e.g.*, *In re Ford Motor Co.*, 211 S.W.3d 295, 298 (Tex. 2006) (per curiam) (orig. proceeding) (applying contract principles to interpret agreed

8

protective order); *Lal v. Harris Methodist Fort Worth*, 230 S.W.3d 468, 474 (Tex. App.—Fort Worth 2007, no pet.) (applying contract principles to construe agreed scheduling order). We construe an unambiguous agreement (i.e., one that is so worded that it can be given a certain or definite legal meaning) as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (citation omitted). "When parties disagree over the meaning of an unambiguous contract, we determine the parties' intent by examining the entire agreement." *Moayedi*, 438 S.W.3d at 7. When construing an agreement, the Court's primary concern "is to ascertain the true intentions of the parties as expressed in the instrument." *Id.* (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)). To accomplish this objective, courts must "examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Coker*, 650 S.W.2d at 393 (citation omitted). We presume that the parties intend every clause to have some effect. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). We construe the Agreed Order with these principles in mind.

The Agreed Order states that the parties entered into it after engaging in informal conferences to settle the Commission's allegations that Sacred Oak "engaged in the conduct as more specifically described in the Commission's April 18, 2019 and June 5, 2019, Notices of Violation (Notices) which are adopted and incorporated in this Agreed Order (Order)." The parties agreed that the Commission had determined that certain enumerated allegations in the Notices were violations of the Commission's Rules and that the Commission would withdraw other allegations and reduce the proposed administrative penalty applied to Sacred Oak. And as previously mentioned, the Agreed Order established that the Commission would probate the denial

9

of Sacred Oak's license-renewal application for twelve months, subject to Sacred Oak's compliance with certain requirements, including its hiring of a Commission-approved outside consultant. Sacred Oak was required to ask the consultant to create a corrective-action plan identifying specific actions to be taken during the probation period "to achieve sustained compliance with all applicable statutes and regulations." Sacred Oak was also required to ask the consultant to provide the Commission with monthly reports detailing Sacred Oak's progress in implementing the specific actions identified in the plan and confirming whether Sacred Oak was "sustaining compliance with all applicable statutes and regulations." The Agreed Order also provided that the Commission could deny the license renewal at any time during the twelve-month probation period, if it found that Sacred Oak had not "made sufficient progress in implementing the Plan and achieving sustained compliance with all applicable statutes and regulations." If the Commission made such a finding during the probation period, it was required to provide Sacred Oak notice of such finding within thirty days.

While we agree with the Commission that the Agreed Order required Sacred Oak to "comply with this Order and with all applicable laws, rules, and regulations governing Psychiatric Hospitals," in Section VI (titled "Settlement"), paragraph 6, that same provision of the Order also established that "[f]ailure to comply shall result in *additional enforcement action*." (Emphasis added.) "Enforcement" is defined in the Commission's Rules as "a process by which a sanction is proposed, and if warranted, imposed on an applicant or licensee regulated by the department for failure to comply with statutes, rules and orders applicable to them." 26 Tex. Admin. Code § 510.83 (2022) (Tex. Dep't of Health & Hum. Servs., Enforcement). The enforcement actions that the Commission may take (denial, suspension, or revocation of a license) all require the Commission to provide notice of the proposed action that "*shall state the alleged*

10

*facts or conduct to warrant the proposed action,* provide an opportunity to demonstrate or achieve compliance, and shall state that the applicant or license holder has an opportunity for a hearing before taking the action." *Id.* § 510.83(7) (emphasis added); *see also* Tex. Health & Safety Code § 577.016(a), (b) (authorizing Commission to "deny, suspend, or revoke a license" if licensee has substantially failed to comply with Commission's rules or certain statutory provisions but mandating that Commission "must give the applicant or license holder notice of the proposed action, an opportunity to demonstrate or achieve compliance, and an opportunity for a hearing before taking the action"). Here, while Sacred Oak engaged in informal settlement conferences to settle the alleged compliance violations that were documented in the Notices and agreed that the Commission could deny its license renewal at the end of the probation period without a hearing or appeal if it found Sacred Oak had failed to achieve substantial compliance, the plain language of several provisions also limits the scope of the waiver of a hearing or appeal in the Agreed Order to only those allegations of violations that the Commission had made before the parties entered into the Agreed Order. The key provisions establish the following:

## VII. COMPLETE AGREEMENT

This Order is made pursuant to Government Code, §2001.056(2), and the procedural rules adopted by the Commission. *This Order represents the complete settlement of all allegations contained in the Notice.*

### A. WAIVER OF APPEAL AND AGREEMENT REGARDING SIGNATURE

In exchange for the execution of this Order, *Respondent waives the right to a hearing or an appeal regarding the Commission findings*, *assessment of the proposed administrative penalty and disposition of this case through the Commission's issuance of an Order.* Respondent has no objection to this Order being signed by either the Executive Commissioner or the Commission or her designee.

11

## B. NO WAIVER WITH REGARD TO OTHER VIOLATIONS

*The Commission does not waive the right* to enforce this Order or *to prosecute any other violations* that Respondent *may hereafter commit.* The Commission shall consider this Order and Respondent's compliance history in the processing of *any other enforcement actions* and the imposition of *any subsequent penalty.*

## C. COMPLETE UNDERSTANDING

The Respondent understands the terms of this settlement agreement, enters into the settlement agreement freely, and agrees to the terms and conditions of this Order.

(Emphases added.)

The Commission argues that the Agreed Order contemplates only two possible outcomes at the end of Sacred Oak's probation period—either a finding that Sacred Oak had achieved sustained compliance with all applicable statutes and regulations, requiring the Commission to renew its license, or a finding that Sacred Oak had not achieved sustained compliance with all applicable statutes and regulations, allowing the Commission to deny the license renewal without a hearing on any compliance violations.[3] However, when read in context with the waiver and no-waiver-with-regard-to-other-violations provisions found in Section VII,

---

[3] The Commission relies on Section VI.4.g. of the Agreed Order to support this argument:

g.　　Upon completion of the Plan, the Facility shall request a survey by the Commission.

　　i.　　If the Commission finds the Facility has achieved sustained compliance with all applicable statutes and regulations, the Commission shall renew license no. 100390.

　　ii.　　If the Commission does not find the Facility has achieved sustained compliance with all applicable statutes and regulations by the end of the Probation Period, the Commission may deny the license renewal.

12

the Agreed Order contemplates a third outcome—that if the Commission finds a failure to achieve sustained compliance with all applicable statutes and regulations based on allegations of compliance violations other than those contained in the Notice, i.e., "other violations that [Sacred Oak] may hereafter commit," the Commission retained the right to prosecute those new violations and Sacred Oak retained the right to a hearing on those new violations. To conclude otherwise would render the waiver and the no-waiver-with-regard-to-other-violations provisions meaningless. [4]

The Commission also argues that the waiver language in Section VII.A. means that Sacred Oak waived its right to appeal the "disposition of this case through the Commission's issuance of *an* Order." The Commission focuses on the use of "an" instead of "this" to describe the "Order," contending that it could not mean that the Agreed Order is the order that disposes of the case and thus the order that Sacred Oak waived its right to appeal from. The Commission asserts that by its own terms the Agreed Order did not dispose of the case because the Agreed Order probated the denial of Sacred Oak's license for a year and postponed the Commission's decision to the end of that probation period. The Commission argues that therefore the December 2020 Notice of Violation (which it characterizes as the December 2020 "Order") was not the start

---

[4] The Commission's proposed construction of the Agreed Order also would render meaningless the provision that would have required the Commission to provide Sacred Oak with notice within thirty days of a finding by the Commission during the probation period, allowing it to deny the license renewal, that Sacred Oak had not made sufficient progress in implementing the consultant's corrective-action plan and achieving sustained compliance with all applicable statutes and regulations. *See* 26 Tex. Admin. Code § 510.83(7) (2022) (Tex. Dep't Health & Hum. Servs., Enforcement) (requiring Commission to send notice of proposed action if it proposes to deny, suspend, or revoke license that "shall state the alleged facts or conduct to warrant the proposed action, provide an opportunity to demonstrate or achieve compliance, and shall state that the applicant or license holder has an opportunity for a hearing before taking the action").

13

of a new case but was instead the final decision in the case that began with the April 2019 Notice and that the final decision was "made pursuant to the Agreed Order."

We do not find this argument persuasive. By its own terms, the Agreed Order defined itself as "Order," and references to "Order" in the Agreed Order plainly mean the Agreed Order itself. The Agreed Order unambiguously settled only the parties' dispute with regard to the Commission's allegations in the April 2019 and June 2019 Notices of Violation ("This Order represents the complete settlement of all allegations contained in the Notice."). Accordingly, the waiver language in Section VII.A. that Sacred Oak waived "its right to a hearing or an appeal regarding the Commission findings, assessment of the proposed administrative penalty, and disposition of this case through the Commission's issuance of an Order," when read in context, means that Sacred Oak waived its right to a hearing on or an appeal concerning only those allegations specifically described in the April 2019 and June 2019 Notices and the case numbers resolved by the Agreed Order.[5]

The Commission further contends that even if we agree with Sacred Oak's argument that it was required only to demonstrate sustained compliance with the statutes and regulations that were the basis for the April 2019 and June 2019 Notices, not with "all applicable statutes and regulations," Sacred Oak did not demonstrate sustained compliance with the

---

[5] The Commission also argues that the December 2020 Notice of Violation must be part of the same administrative case because it referenced the three case numbers and docket number from the April 2019 Notice and a fourth case number and a second docket number from the June 2019 Notice, all of which were also referenced in the Agreed Order. The Commission's choice not to assign a new case number or docket number to the new allegations of compliance violations in the December 2020 Notice is not determinative of whether Sacred Oak waived its right to a hearing or appeal concerning those new allegations.

14

regulations cited in the allegations settled in the Agreed Order.[6] The Commission asserts that the December 2020 Notice of Violation alleges several of the same regulatory violations that had been alleged against Sacred Oak in the April 2019 Notice and that therefore the Commission was entitled to deny Sacred Oak's license-renewal application without notice or a hearing or appeal.

Although the Commission points to multiple alleged violations of its Rule 510.41 in both the April 2019 Notice and the December 2020 Notice, the alleged violations involve different subsections of Rule 510.41. Rule 510.41 is a lengthy regulation with subsections (a)-(p) and governs a wide span of facility services, ranging from regulations related to dietary services and outpatient services (the bases for the April 2019 allegations) to regulations concerning the facility's governing body, medical-record services, and quality assurance (the bases for the December 2020 allegations), among others. *See* 26 Tex. Admin. Code § 510.41 (2022) (Tex. Dep't of Health & Hum. Servs., Facility Functions & Servs.). Likewise, the Commission's other assertion of an overlapping regulation in fact involves different issues based on different subsections of a different (since repealed) regulation. In April 2019, the Commission alleged that Sacred Oak had violated Rule 411.471(b), which governs the facility's completion of a written treatment plan within twenty-four hours, as to five patients; in December 2020, the Commission alleged that Sacred Oak had violated Rule 411.471(e), which requires a facility to revise a patient's treatment plan as necessary when clinically indicated, as to one patient. *See* 25 *id.* § 411.471(b), (e) (2020) (Tex. Dep't of State Health Servs., Inpatient Mental Health Treatment & Treatment Planning), *repealed by* 46 Tex. Reg. 3253 (2021). The Commission's allegations in the April 2019 and December 2020 Notices thus involve allegations of different conduct, and contrary to the

---

[6] We note that the Agreed Order does not define what constitutes "sustained compliance" with the applicable statutes and regulations.

15

Commission's argument, the December 2020 Notice does not contain "several of the same regulatory violations Sacred Oak had received in the April Notice."

We agree with Sacred Oak that read as a whole, the Agreed Order's waiver of its right to a hearing or appeal only waived its right as to those allegations of compliance violations that Sacred Oak was notified of in the April 2019 and June 2019 Notices, which were the allegations settled by the Agreed Order. Nowhere in the Agreed Order did Sacred Oak waive its right to notice of new allegations of violations that could potentially lead to the denial of its license renewal. Nor did Sacred Oak waive the accompanying rights to "an opportunity to demonstrate or achieve compliance, and an opportunity for a hearing" before the Commission took that action based on new allegations. *See* Tex. Health & Safety Code § 577.016(b). The only construction of the Agreed Order that gives effect to all its provisions is this: Sacred Oak waived its right to a hearing or appeal from a Commission decision to deny its license renewal based on Sacred Oak's failure to resolve (i.e., achieve substantial compliance with) those allegations that the Agreed Order settled, but it did not waive its right to notice of subsequent allegations of violations, an opportunity to achieve compliance, and an opportunity for hearing or appeal concerning any new allegations. We conclude that there was no waiver in the Agreed Order that rendered the Commission's denial of Sacred Oak's license renewal final and unappealable, and thus, the purported waiver did not render the trial court without jurisdiction over Sacred Oak's suit.

In the alternative, the Commission contends that because its Appeals Division has docketed Sacred Oak's requested hearing, Sacred Oak must first exhaust its administrative

16

remedies before seeking relief from the trial court.[7] We disagree. In this case, Sacred Oak does not seek solely to have the trial court determine the merits of the new allegations made by the Commission in the December 2020 Notice. Instead, Sacred Oak seeks (and the trial court awarded) injunctive relief on its ultra vires and constitutional claims, pending the very administrative process that the Commission says it must first exhaust. In this interlocutory appeal brought by the Commission, the central question underlying the propriety of the trial court's order is a pure question of law—the construction of the unambiguous Agreed Order to determine whether Sacred Oak has the right to an administrative hearing on the Commission's new allegations or whether Sacred Oak waived that right in the Agreed Order. One exception to the exhaustion doctrine is when a pure question of law is involved. *See, e.g.*, *MAG–T, L.P. v. Travis Cent. Appraisal Dist.*, 161 S.W.3d 617, 634 (Tex. App.—Austin 2005, pet. denied) (citing *Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 892 (Tex. 1986) (concluding that determination of teacher's statutory rights related to term contracts, which might include application of school district's probationary policy, was not pure question of law), *abrogated on other grounds by Dubai Petrol. Co. v. Kazi*, 12 S.W.3d 71 (Tex. 2000)). Thus, under these circumstances, where the Court's construction of the parties' Agreed Order resolves the legal issue of whether Sacred Oak is entitled to its requested administrative remedies, we conclude that it was not required to first exhaust those administrative remedies.

---

[7] The Commission notes that despite the ministerial docketing of Sacred Oak's request for an appeal by its Appeals Division, it does not concede that Sacred Oak has any right to an administrative hearing and that agency rules contemplate that it may still seek dismissal of the appeal for lack of jurisdiction.

### C. Sacred Oak's Ultra Vires Claim

We next consider the Commission's contention that the trial court erred in denying its plea to the jurisdiction because Sacred Oak failed to properly plead an ultra vires claim against the Commissioner. Sovereign immunity does not bar claims alleging that a government officer acted ultra vires, or without legal authority, in carrying out her duties. *Houston Belt*, 487 S.W.3d at 157-58. As an initial matter, the Commission urges that Sacred Oak has failed to adequately allege any ultra vires acts by the Commissioner, who is the only individual state official named as a party. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372-73 (Tex. 2009) (establishing that ultra vires suits must be brought against state actors in their official capacity for acts outside their legal authority or for failure to perform purely ministerial acts). We disagree. Liberally construing Sacred Oak's petition, as we must, we conclude that it provides fair notice to the Commission and to the Commissioner, who was sued in her official capacity, that Sacred Oak contends that the Commissioner acted outside her statutory authority by directing an associate commissioner to issue the December 2020 Notice denying Sacred Oak's license renewal and closing its facility without providing it with prior notice of the new allegations and an opportunity to take corrective action and to have a hearing on the allegations. *See* Tex. Health & Safety Code § 577.016(a), (b); *see also* 26 Tex. Admin. Code § 510.83(7). Given our prior conclusion that Sacred Oak did not waive its right to a hearing or an appeal of new allegations, we determine that Sacred Oak has properly pleaded that the Commissioner acted outside her legal authority.

The Commission also asserts that Sacred Oak failed to properly plead its ultra vires claim because its claim seeks retrospective rather than prospective relief. The Commission urges that Sacred Oak essentially seeks a repeal of the Commission's past action by seeking a declaratory judgment that the denial of Sacred Oak's license renewal and its closure are void ultra vires acts.

18

However, as Sacred Oak points out, the relief it seeks from those void acts is relief compelling legal compliance going forward; it seeks the declaratory judgment as a basis for injunctive relief requiring the Commission to withdraw its December 2020 Notice pending the administrative proceedings required by the statute and the Commission's rules. *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 348 (Tex. 2019) ("'*[U]ltra vires* claims' must be brought against government officials in their official capacity and may seek only prospective injunctive remedies."). We conclude that Sacred Oak's claim properly seeks only prospective injunctive relief allowing it to operate going forward while it engages in the administrative proceedings.

In addition, the Commission contends that Sacred Oak has improperly pleaded an ultra vires claim against the Commission. However, Sacred Oak's claims for injunctive relief are also based on its constitutional claim that the Commission's actions violated Article 1, Section 19 of the Texas Constitution. The Commission does not address Sacred Oak's due-course-of-law claim, and it is well settled that "'suits for injunctive relief' may be maintained against governmental entities to remedy violations of the Texas Constitution." *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007) (per curiam) (quoting *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex.1995)). Thus, the trial court did not err by refusing to dismiss Sacred Oak's claim for injunctive relief on this basis.

We conclude that the trial court correctly denied the Commission's plea to the jurisdiction because Sacred Oak did not waive its right to a hearing on the newly alleged violations that were the bases for the denial of its license renewal in the December 2020 Notice, it was not required to exhaust its administrative remedies before bringing suit to enforce its right to

19

administrative remedies, and it properly pleaded an ultra vires claim against the Commissioner and a constitutional claim against the Commission. We overrule the Commission's first issue.

## II.     Temporary Injunction

"A temporary injunction is an extraordinary remedy that does not issue as a matter of right." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)). The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending trial on the merits. *Id.* To obtain relief, the party applying for a temporary injunction "must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Abbott v. Anti-Defamation League Austin, Sw. & Texoma Regions*, 610 S.W.3d 911, 916 (Tex. 2020) (quoting *Butnaru*, 84 S.W.3d at 204).

The decision to grant a temporary injunction lies in the sound discretion of the trial court and is subject to reversal only for a clear abuse of that discretion. *Butnaru*, 84 S.W.3d at 204. A trial court abuses its discretion when it acts unreasonably or in an arbitrary manner or without reference to any guiding rules and principles. *Id.* at 211. When reviewing a temporary-injunction order, we view the evidence in the light most favorable to the order, indulging every reasonable inference in its favor, and "determine whether the order was so arbitrary that it exceeds the bounds of reasonable discretion." *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 857 (Tex. App.—Fort Worth 2003, no pet.). "The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision." *Butnaru*, 84 S.W.3d at 211.

On appeal, the Commission asserts that the trial court abused its discretion by granting Sacred Oak's requested injunction because Sacred Oak failed to establish all three of the

required elements. First, the Commission contends Sacred Oak could not establish a valid cause of action because the trial court lacked subject-matter jurisdiction over Sacred Oak's claims as discussed above. The Commission argues that Sacred Oak's claim for judicial review is waived, or alternatively, not ripe because Sacred Oak has not exhausted its administrative remedies, and that its ultra vires claim either fails outright or is improperly pleaded. We have already disposed of these arguments and concluded that the trial court correctly decided that it had jurisdiction over Sacred Oak's claims, and thus, we conclude here that the trial court correctly concluded that Sacred Oak has a cause of action against the Commission.

The Commission's second argument depends on its first. It argues that because there is no cause of action, Sacred Oak cannot show a probable right to the relief sought. As with the first element, we have concluded that the trial court has jurisdiction to consider Sacred Oak's claim that it is entitled to an administrative hearing and (if necessary) an appeal on the new allegations in the December 2020 Notice that the Commission relied on as the basis for the license denial and facility closure. We also concluded that its ultra vires claim against the Commissioner and its constitutional claim against the Commission were properly pleaded. Accordingly, the Commission has not shown how trial court abused its discretion by finding that Sacred Oak demonstrated the likelihood of success on the merits at trial, including that the December 2020 Notice "may violate Texas Administrative Code § 510.83 by purporting to deny Sacred Oak's application for renewal of its hospital license without providing prior notice of same, prior opportunity to demonstrate or achieve compliance, and prior opportunity for a hearing."

Finally, as to the third element—a probable, imminent, and irreparable injury—the Commission argues that Sacred Oak failed to meet its burden to show irreparable harm because it did not put on evidence of financial harm at the hearing. However, the Commission stipulated in

21

the trial court that the closure of Sacred Oak's facility would cause it irreparable harm and economic injury without the temporary injunction. Thus, the trial court did not abuse its discretion by "[f]inding that irreparable harm and economic injury will be sustained by Sacred Oak by the continued closure of the hospital and consequent disruption of its business with the enforcement of the [December 2020 Notice]."

Having rejected the Commission's arguments, we conclude that the trial court did not abuse its discretion by imposing a temporary injunction to prevent the Commission from enforcing the December 2020 Notice and requiring it to restore Sacred Oak to the operational status quo that existed before the date of the Notice.[8] We overrule the Commission's second issue.

---

[8] Sacred Oak also seeks a permanent injunction allowing it to stay open pending the administrative processes provided by statute and rule. And, as previously noted, the Commission's Appeals Division docketed Sacred Oak's requested administrative hearing cause number after suit was filed. Under these circumstances, where we have determined that Sacred Oak was not required to exhaust its administrative remedies before seeking relief from the trial court on the pure legal question of construction of the unambiguous Agreed Order to determine whether it has the right to an administrative hearing on the Commission's new allegations, the trial court did not abuse its discretion by abating the case pending the outcome of the administrative cause and exhaustion of administrative remedies. *Cf. Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221-22 (Tex. 2002) (explaining distinction between primary and exclusive jurisdiction but explaining circumstances exist under both doctrines that make it appropriate for trial court to abate proceedings to allow agency to have opportunity to act on matter).

**CONCLUSION**

We affirm the trial court's order denying the Commission's plea to the jurisdiction and granting Sacred Oak's temporary injunction.[9]

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed:  June 23, 2022

_____

[9] The Commission has filed a motion to dismiss this appeal suggesting that the controversy has become moot because Sacred Oak's license has expired.  The Commission asserts that it had administratively continued the initial May 31, 2019 license expiration date, pursuant to Texas Government Code Section 2001.054(b), and that it then further extended the license expiration date to November 30, 2021, after we issued our order reinstating the temporary injunction. However, Government Code Section 2001.054(d) establishes that (1) a license remains valid unless the denial of a renewal application becomes final and (2) "[t]he term or duration of a license described in Subsection (a) is tolled during the period the license is subjected to judicial review." We have determined that the Commission's denial of Sacred Oak's license is not final; thus, the term of the license is tolled while the case is pending.  Consequently, we deny the motion to dismiss.